863 P.2d 284

**In the Matter of the APPEAL IN PIMA COUNTY MENTAL HEALTH SERVICE ACTION NO. MH–1140–6–93.**

**No. 2 CA–MH 93–0001.**

Court of Appeals of Arizona, Division 2, Department B.

Nov. 16, 1993.

Howard Baldwin, Tucson, for appellant.

Stephen D. Neely, Pima County Atty. by Michael P. Callahan, Tucson, for appellee.

*OPINION*

ESPINOSA, Presiding Judge.

This appeal arises from an involuntary treatment order pursuant to A.R.S. § 36–501 *et seq.*, directing that appellant R.S. be

treated at the Arizona State Hospital for not more than 180 days, with out-patient treatment for up to 365 days. The issues raised on appeal are whether substantial evidence supported the trial court's finding of persistent or acute disability when R.S. was not provided explanations regarding advantages, disadvantages and alternatives to treatment as required by A.R.S. § 36–501(29)(b), and whether appellant's federal and state due process rights were violated by other alleged failures to comply with the commitment statutes. We affirm.

### Facts and Procedural History

R.S. was, at the time of the order, in the care of the Arizona Center for Clinical Management (ACCM), with a history of mental illness dating from 1982. He had been diagnosed as suffering from paranoid schizophrenia. In February 1993, R.S. reportedly created a disturbance by walking in traffic at a busy intersection. The police sought to take him into custody but could not find him until March 3 when he went to ACCM to complain about his case worker. From there he was taken by ambulance to Kino Hospital, and, upon learning he was being admitted, signed in under a name other than his own, refused to cooperate in the admissions process, refused medication and examination, and refused to communicate with psychiatrists regarding his condition. He was subsequently involved in an incident in which he attempted to strike a Kino mental health technician.

On March 8, Dr. Robert Wolgamott, a psychiatrist, petitioned for court-ordered and custodial evaluations, and an order was signed the same day. Filed with the petitions was a screening report compiled by Dr. Wolgamott and R.S.'s caseworker. On March 11 a petition for court-ordered treatment was filed, alleging that R.S. was a danger to himself and others. A second petition was filed at the same time, alleging R.S. was suffering from a persistent and acutely disabling mental disorder. The petitions were supported by a three-page report by Dr. Wolgamott, his affidavit, and the report and affidavit of Dr. Keith Treptow, another psychiatrist. After a hearing,

the trial court dismissed the allegations of dangerousness to self and others but ordered that R.S. receive in-patient treatment for a period not to exceed 180 days, based on acute and persistent mental disability.

### Sufficiency of the Evidence

 If a court finds clear and convincing evidence that a person is acutely disabled, it may order that person to undergo involuntary treatment. A.R.S. § 36–540; *In re Commitment of an Alleged Mentally Disordered Person MH 91–00558*, 175 Ariz. 221, 854 P.2d 1207 (App.1993). We will affirm such an order if it is supported by substantial evidence. *Id. See also In re Maxwell*, 146 Ariz. 27, 703 P.2d 574 (App.1985); *Matter of Appeal in Maricopa County Juvenile Action No. JS–4130*, 132 Ariz. 486, 647 P.2d 184 (App.1982). Related findings will not be set aside unless they are clearly erroneous. *Coconino County No. MH 1425*, 176 Ariz. 525, 862 P.2d 898 (App.1993).

 Under A.R.S. § 36–501(29), a finding of acute disability requires clear and convincing evidence of a severe mental disorder which meets all three of the following criteria:

(a) If not treated has a substantial probability of causing the person to suffer or continue to suffer severe and abnormal mental, emotional or physical harm that significantly impairs judgment, reason, behavior or capacity to recognize reality.

(b) Substantially impairs the person's capacity to make an informed decision regarding treatment and this impairment causes the person to be incapable of understanding and expressing an understanding of the advantages and disadvantages of accepting treatment and understanding and expressing an understanding of the alternatives to the particular treatment offered after the advantages, disadvantages and alternatives are explained to that person.

(c) Has a reasonable prospect of being treatable by outpatient, inpatient or combined inpatient and outpatient treatment.

Appellant contends that the trial court's finding that he suffered from an acute and persistent disability was clearly erroneous because there was no evidence that treatment advantages, disadvantages and alternatives were communicated to him, as required under subsection (b). He does not challenge the findings related to subsections (a) and (c); we therefore accept those elements of the statute as established. Our review of the record leads us to conclude that substantial evidence supported the trial court's order of involuntary treatment.

There are two requirements contained in § 36–501(29)(b): the mental disorder must substantially impair the ability to make informed decisions regarding treatment, and the mental disorder must cause the person not to be able to understand the treatment offered "after the advantages, disadvantages and alternatives are explained to that person." Division One of this court has recently held that failure to give the required explanations vitiates a finding of ·disability under § 36–501(29). *In re MH 91–00558, supra.* In that case, an order of involuntary treatment of a 25–year–old nursing student with no prior psychiatric history was set aside where two evaluating psychiatrists discussed with the patient their treatment recommendations but failed to advise her of any options or alternatives, due to their belief that there "were none" in view of her mental condition. The court concluded that a physician's opinion that the patient is incapable of understanding the explanations required by the statute, without having offered such explanations, does not satisfy the requirements of § 36–501(29)(b).

Here, unlike *In re MH 91–00558*, no conversations with appellant regarding his condition or treatment alternatives were possible. Dr. Wolgamott stated in his report that when he attempted to talk to R.S., "he got up and walked away." In response to whether he attempted to explain the nature and purpose of the interview and evaluation, Wolgamott testified,

Yes, I've attempted to approach him over many occasions....

I attempted to contact and talk with him, but usually he walked away and muttered toward me and said things that I don't quite understand, so we've never really had a conversation about that.

In his report, the doctor indicated that R.S. wanted nothing to do with me and as I approached him the second time, he again got up and walked away. It was obvious he did not wish any confrontations. He was trying to apparently keep away from me and did not wish to talk to me.

In reporting the results of appellant's mental status examination the doctor further wrote:

He is noncompliant. When approached, he stands up and walks away. He appears to feel that I am invading his privacy in the case that I have no right to talk to him, that something is going on, did not make any logical sense.

With respect to a physical examination the doctor described R.S. as a "well-developed, disheveled, Caucasian male, walking around the unit, trying to get away from me." When asked if he had done an evaluation, Dr. Wolgamott responded, "As well as I could under the circumstances."

Dr. Keith Treptow, a second psychiatrist, testified:

[R.S.] would not allow me to talk with him. I talked on two or three occasions, and he told me that he would in no way allow me to speak with him, conduct an interview or ask him any questions.

I therefore went over old charts and talked with the hospital staff, the nursing staff in order to try and determine an evaluation and determine the diagnosis.

Both Drs. Treptow and Wolgamott testified that R.S. was seriously ill, that his condition was deteriorating, and that he would not voluntarily comply with needed treatment.

■ Statutes providing for involuntary commitment on the basis of mental illness must be strictly construed. *See In re Burchett*, 23 Ariz.App. 11, 530 P.2d 368 (1975). *See also Matter of Appeal in Pima County Mental Health Matter No. MH 862–16–*

*84,* 143 Ariz. 338, 693 P.2d 993 (App.1984). We will not, however, apply the law in a manner resulting in absurdity or impossibility; to do so would be contrary to legislative intent. *See Herberman v. Bergstrom,* 168 Ariz. 587, 816 P.2d 244 (App. 1991) (clear language of statute is given its usual meaning unless impossible or absurd consequences result). Although A.R.S. § 36–501(29)(b) requires a determination of whether a person has the capacity to understand and to express an understanding of treatment advantages, disadvantages and alternatives after the same are explained to that person, we do not believe that mental health officials must engage in a confrontation with a mentally ill patient or have the patient physically restrained in order to fulfill the letter of the requirement. This is particularly true where, as here, the record reflects a long history of mental illness, and the testimony of four witnesses establishes current behavior supporting the diagnosis of an acute and persistent disorder.

In this case, as in *In re Maricopa County No. MH 90–00566,* 173 Ariz. 177, 840 P.2d 1042 (App.1992), the treating psychiatrist, Dr. Wolgamott, testified that the patient was unable to understand and express an understanding of treatment alternatives because of his mental disorder. Wolgamott also testified that R.S. did not "process[ ] reality" very well and reported that he "appears to show no judgment in the situation and have no insight as to what is really going on." R.S.'s own statements at the hearing were further evidence of his mental disassociation and inability to address his psychiatric problems. *See In re Pima County Mental Health No. MH 2081–3–90,* 169 Ariz. 141, 817 P.2d 945 (App.1991). Based upon the testimony and other evidence in the record, we cannot say that the trial court's finding of acute disability was not supported by substantial evidence.

## Due Process Claims

R.S. raises numerous additional claims alleging violations of his federal and state due process rights, none of which appear compelling and several of which facially lack merit. Because none of these arguments were raised below, they are waived and we decline to consider them for the first time on appeal. *Stewart v. Mutual of Omaha,* 169 Ariz. 99, 817 P.2d 44 (App.1991). *See Gosewisch v. American Honda Motor Co., Inc.,* 153 Ariz. 400, 737 P.2d 376 (1987) (constitutional arguments may, but need not be considered if raised for first time on appeal).

The trial court's judgment and order of treatment is affirmed.

DRUKE, C.J., and HATHAWAY, J., concur.