863 P.2d 908

**In the Matter of the APPEAL IN GILA COUNTY OF MENTAL HEALTH CASE NO. MH 92–020.**

**No. 2 CA–MH 93–0002.**

Court of Appeals of Arizona, Division 2, Department A.

Nov. 19, 1993.

Grant Woods, Atty. Gen. by Vicki Gotkin Adler, Phoenix, for appellant.

Joe Albo, Jr., Gila County Atty. by Candyce B. Pardee, Globe, for respondent.

## CORRECTED OPINION

LACAGNINA, Judge.

The State of Arizona appeals from the trial court's order in a mental health proceeding waiving mandatory local treatment required by A.R.S. § 36–541(B). The state argues that only the superintendent of the Arizona State Hospital (ASH) has the discretion to waive mandatory local treatment. We agree and reverse the order of commitment entered in this case. In addition, we hold that the computation for the time in which the patient is to be committed begins with the execution of the order for commitment.

■ Although the commitment order in this case is now moot, we agree with the state's argument that the merits of this case present an issue of statewide importance which is capable of repetition but which, because of the statutory time constraints on commitment orders, would evade judicial review. We therefore exercise our discretion to decide the merit of the issues presented. *In the Matter of Application for Commitment of an Alleged Mentally Disordered Person,* 176 Ariz. 525, 862 P.2d 898 (App.1993).

The county's petition for court-ordered mental health treatment alleged that the patient was, as the result of a mental disorder, persistently or acutely disabled. Evidence received at the November 25, 1992 hearing supported the petition. The two doctors who testified did not believe the patient required housing in a locked facility as long as he was monitored to insure that he took his medication. Neither doctor found the patient to be psychotic or in need of acute in-patient care, but rather concluded that he would benefit from supervised care to insure reliable intake of medication. Dr. Amezcua–Patino proposed several re-entry facilities that could meet the patient's needs that were not locked facilities, and Dr. Jarvis agreed that the care facility need not be locked. ASH is a locked facility, and neither doctor recommended that

the patient be committed to ASH for treatment.

■ A.R.S. § 36–541(B) provides:

B. A patient who is ordered by a court to undergo treatment based on a determination that he is persistently or acutely disabled *shall be treated for at least twenty-five days solely in or by a local mental health treatment agency* geographically convenient for the patient unless he is accepted by the superintendent of the state hospital for treatment at the state hospital.

(Emphasis added.) "Persistently or acutely disabled" is defined in A.R.S. § 36–501(29):

29. "Persistently or acutely disabled" means a severe mental disorder that meets all the following criteria:

(a) If not treated has a substantial probability of causing the person to suffer or continue to suffer severe and abnormal mental, emotional or physical harm that significantly impairs judgment, reason, behavior or capacity to recognize reality.

(b) Substantially impairs the person's capacity to make an informed decision regarding treatment and this impairment causes the person to be incapable of understanding and expressing an understanding of the advantages and disadvantages of accepting treatment and understanding and expressing an understanding of the alternatives to the particular treatment offered after the advantages, disadvantages and alternatives are explained to the person.

(c) *Has a reasonable prospect of being treatable by outpatient, inpatient or combined inpatient and outpatient treatment.*

(Emphasis added.)

This statute was enacted in 1990 and is designed to serve a particular population of patients who have a reasonable chance of being treatable but are likely to decompensate and become dangerous to themselves and others without mental health treatment. *In the Matter of Maricopa County MH–90056,* 173 Ariz. 177, 840 P.2d 1042

(App.1992). Because this type of patient can be treated and stabilized without the restrictions of a locked facility like ASH, the legislature required mandatory treatment in or by a local treatment facility before transfer to ASH unless local treatment is waived by the superintendent of ASH.

The trial court probably confused the exceptions found in A.R.S. § 36–541(A), which cover patients found to be either a danger to themselves or others and those who are gravely disabled. A.R.S. § 36–541(A) states:

> **A.** A patient who is ordered by a court to undergo treatment, if not hospitalized in the state hospital at the time of the order, shall undergo treatment for at least twenty-five days in a local mental health treatment agency geographically convenient for the patient before being hospitalized in the state hospital. *This section shall not apply if the court finds,* at a hearing on court-ordered treatment, that the patient's present condition and history demonstrate *that the patient will not benefit from the required period of treatment in a local mental health treatment agency* or that the state hospital provides a program which is specific to the needs of the patient and is unavailable in the local mental health treatment agency, *or where there is no local mental health treatment agency readily available to the patient.* Such a finding shall be based at least upon the annual written description by the state hospital of programs and services available and appropriate written reports from the medical director of the local mental health treatment agency. The patient may be immediately hospitalized at the state hospital whenever the court determines that this section does not apply.

(Emphasis added.)

· The trial court must enforce the plain meaning of the statute, and there is nothing in the statute which gives the trial court authority to waive local treatment for patients who are found to be "persistently or acutely disabled" and therefore covered by § 36–541(B). The trial court was required to enforce the provisions of § 36–541(B) and order mandatory twenty-five day local treatment before transfer to ASH. Only the superintendent of ASH can waive the mandatory local treatment by accepting the patient for treatment at the state hospital, as specifically stated in the statute. There is no other exception to the mandatory twenty-five day local treatment for "persistently or acutely disabled" patients. We agree with the state that ASH is not a "dumping ground" for people whose counties choose not to provide statutorily mandated services. Gila County has a mandatory, non-discretionary duty to provide local treatment to persons committed for involuntary mental health treatment. *Arnold v. Arizona Department of Health Services,* 160 Ariz. 593, 775 P.2d 521 (1989); A.R.S. § 11–297.01.

In an attempt to avoid the plain language of the statute, the trial court, at subsequent hearings for reconsideration filed by the state, determined that prior to the November 25, 1992 commitment hearing, the patient had been at the Desert Vista Hospital for twenty-five days for evaluation and treatment under another petition thereby satisfying the statutory requirement. The mandatory twenty-five day local treatment required by § 36–541(B) begins after the order for involuntary commitment is executed. The order is limited in overall length by A.R.S. § 36–540(F), and local treatment must be provided within the overall time limitation.

The time limits on involuntary commitment are an important part of the mental health statutes and the computation of the time limits must be based on a clearly defined point of beginning. Mental health treatment providers cannot be required to guess at how many days a patient may have been treated voluntarily or·involuntarily in an evaluation facility prior to an order for involuntary commitment, in determining when the patient has been involuntarily held for the maximum periods provided by §§ 36–540(A)(3) and (F). The execution of the order for commitment is such a clearly defined point, and the county must provide or pay for the cost of local treatment for twenty-five days beginning with the execution of the order for commitment.

We reject the county's argument that "[e]ach day a person is involuntarily deprived of freedom should be credited towards the treatment days, just as each day a defendant is deprived of his freedom is credited toward his final sentence." The difference between persons receiving court-ordered treatment and those being imprisoned as punishment for crimes makes the comparison untenable. Commitment proceedings in this case began with the filing of a petition and ended with execution of the order. All of the time limits of §§ 36–540(A)(3) and (F) and 36–541(B) begin with the execution of the order.

The order of the trial court waiving the mandatory twenty-five day local treatment and its post-hearing determination that the pre-commitment treatment under a different proceeding satisfied the requirements of the statute is reversed.

LIVERMORE, P.J., and FERNANDEZ, J., concur.