897 P.2d 742

**In the Matter of the Appeal in Maricopa County of MENTAL HEALTH CASE NO. MH 94–00592.**

**No. 1 CA–MH 94–0002.**

Court of Appeals of Arizona, Division 1, Department B.

June 1, 1995.

Grant Woods, Atty. Gen. by Vicki Gotkin Adler, Asst. Atty. Gen., Phoenix, for appellant.

Dean W. Trebesch, Maricopa County Public Defender by Consuelo O. Leon, Deputy Public Defender, Phoenix, for patient, appellee.

**OPINION**

LANKFORD, Presiding Judge.

The Arizona State Hospital ("ASH") appeals from the dismissal of its petition for court-ordered mental health treatment. The superior court found that ASH failed to provide sufficient evidence of the patient's current behavior to indicate that he was persistently or acutely disabled as a result of a mental disorder. On appeal, three issues are presented:

1. Do we have jurisdiction over this appeal?

2. Did the trial court erroneously interpret the Mental Health Services Act [1] to require clear and convincing evidence of *current* behavior which demonstrates the patient's persistent or acute disability?

3. Did the trial court erroneously dismiss ASH's petition?

The relevant facts are as follows. The patient, a twenty-six year-old man, was being

---

1. Ariz.Rev.Stat.Ann. ("A.R.S.") §§ 36–501 *et seq.*

treated at ASH at the time of the filing of the petition. Prior to this admission to ASH and starting from the age of sixteen, the patient had experienced numerous hospitalizations due to acute psychotic disturbances. During the course of these hospitalizations, the patient was repeatedly diagnosed with bipolar affective disorder mixed with psychosis and psychoactive substance abuse. The patient has consistently denied having any substance abuse problem.

The patient's past record included aggressive, delusional, and unpredictable behavior such as setting fire to his mother's carpet, assaulting his mother, throwing a telephone at elderly people while in the hospital, hearing voices, and seeing demons. He had a pattern of failing to take prescribed medication unless he was supervised.

From January 27 to February 15, 1994, the patient received outpatient mental health treatment at the Maricopa Medical Center pursuant to a prior court order. When the patient became noncompliant with treatment and exhibited assaultive behavior toward his mother, the outpatient treatment team requested that the court order be amended to permit inpatient treatment at ASH. The superior court revised its order to reflect the transfer to ASH.

While hospitalized at ASH, the patient was treated with various medications, including Lithium, Klonopin, Congentin, Thorazine, and Depakote. As his condition stabilized, the patient requested voluntary status. At ASH's request, the court terminated the patient's prior court order. ASH permitted him to stay at the hospital on a "sign in" basis. Several days after he signed in, the patient attempted to discharge himself against the physicians' advice. As a result, ASH petitioned the superior court for involuntary treatment for the patient.

At the hearing on the petition, Dr. Lydia Torio, the consulting psychiatrist at ASH, testified to the patient's psychiatric history, his current mental and emotional condition, and the reasons for the requested court-ordered treatment. In Dr. Torio's opinion, the patient was persistently disabled because he suffered from symptoms of bipolar disorder involving grandiose and paranoid delu-sions. She specifically noted that the patient was not exhibiting good judgment. He insisted on leaving the hospital despite not having any definite plan for further treatment. In addition, he adamantly denied having any mental disorder or needing medical treatment. Dr. Torio expressed concern that the patient would not take his medication if he were released from ASH. She recommended that the patient remain at ASH or in another highly supervised facility where he could be monitored continually to ensure his compliance with medication.

The parties also agreed to admit into evidence the affidavit of Dr. Austin Shinkoda, a psychiatrist who treated the patient at ASH. In a preprinted form affidavit in which Dr. Shinkoda marked various statements he found applicable to the patient, he characterized the patient as suffering from acute mental disturbances. The disturbances were manifested by delusional ideation, agitation, significant impairment of judgment and insight, and acute affective and behavioral lability. It was also Dr. Shinkoda's opinion that the patient was persistently or acutely disabled and in need of inpatient and supervised outpatient treatment.

According to the testimony of two nurses from ASH, the patient generally complied with his medication regimen and recreational privileges. However, he persistently denied having a medical problem or requiring medical treatment. The patient's social worker also testified at the hearing. He agreed with the physicians that ASH was the least restrictive placement available to the patient at that time.

The superior court concluded that ASH had not shown by clear and convincing evidence that, at the time of the hearing, the patient was exhibiting behavior which demonstrated his persistent or acute disability. The court based its decision on evidence that the patient's condition had improved, that he was medicine compliant, and that he had accepted voluntary inpatient treatment. The court dismissed ASH's petition, and ASH timely appealed.

## I.

Our jurisdiction is a threshold question in this appeal. The patient argues that A.R.S. section 36–546.01 does not provide ASH with an avenue for appeal. A.R.S. section 36–546.01 provides:

An order for court ordered treatment may be reviewed by appeal to the court of appeals as prescribed in the Arizona Rules of Civil Procedure or by special action. Such appeal or special action shall be entitled to preference.

The patient reasons that because the superior court did not order treatment, the court's order dismissing the petition is nonappealable and ASH's sole remedy is to file another petition for court-ordered treatment.

We have jurisdiction pursuant to the general jurisdiction statute, A.R.S. section 12–2101(B). That statute authorizes appellate review of any "final judgment entered in an action or special proceeding commenced in a superior court." Section 36–546.01 is indeed inapplicable, but that merely means that this appeal is not entitled to the preference established by that statute for appeals by patients when they are ordered to submit to treatment.

Nor is this appeal moot. Although ASH's petition will have become stale during this appeal, the issue presented is one of statewide importance, which is capable of repetition yet evading review. *See, e.g., Matter of Mental Health Case MH 92–020,* 176 Ariz. 616, 617, 863 P.2d 908, 909 (App.1993); *Matter of Alleged Mentally Disordered Person,* 181 Ariz. 290, 889 P.2d 1088, 1090 (1995). Not only may the issue recur when ASH petitions for the same treatment for other similarly situated patients, this patient has repeatedly been diagnosed with mental disorders and therefore may be subject to petitions for court-ordered treatment in the future.

Furthermore, the need to clarify the statutory scheme governing mental health services is an issue of considerable public interest. We therefore consider the merits of this appeal.

## II.

We review the trial court's decision to determine whether it is supported by substantial evidence. *Matter of Pima County Mental Health Serv.,* 176 Ariz. 565, 566, 863 P.2d 284, 285 (App.1993). The court's findings of fact will not be set aside unless they are clearly erroneous or unsupported by any credible evidence. *Matter of Coconino County No. MH 1425,* 176 Ariz. 525, 528, 862 P.2d 898, 901 (App.1993), *vacated on other grounds,* 181 Ariz. 290, 889 P.2d 1088 (1995). However, the interpretation of a statute constitutes a legal question and is therefore reviewed *de novo. Arnold v. Arizona Dep't of Health Serv.,* 160 Ariz. 593, 603, 775 P.2d 521, 531 (1989).

ASH challenges the superior court's decision requiring proof that the patient is exhibiting behavior at the time of the hearing which indicates a persistent or acute disability. According to ASH, proof of persistent or acute disability does not require behavioral evidence. The patient responds that the court must consider the patient's current behavior before rendering a finding of persistent or acute disability.

The governing statutes do not require evidence of behavior that reveals the disability. Under A.R.S. section 36–540(A), the court shall order a proposed patient to undergo mental health treatment if it "finds by clear and convincing evidence that [he] is, as a result of mental disorder, ... persistently or acutely disabled ... and in need of treatment, and is either unwilling or unable to accept voluntary treatment." "Persistently or acutely disabled" is defined as a *severe mental disorder* that meets all of these criteria:

(a) If not treated has a substantial probability of causing the person to suffer or continue to suffer severe and abnormal mental, emotional or physical harm that significantly impairs judgment, reason, behavior or capacity to recognize reality.

(b) Substantially impairs the person's capacity to make an informed decision regarding treatment and this impairment causes the person to be incapable of understanding and expressing an understanding

of the advantages and disadvantages of accepting treatment and understanding and expressing an understanding of the alternatives to the particular treatment offered after the advantages, disadvantages and alternatives are explained to that person.

(c) Has a reasonable prospect of being treatable by outpatient, inpatient or combined inpatient and outpatient treatment.

A.R.S. § 36–501(29). This statute focuses on the *mental disorder* which may cause the impairment of *either* thought processes *or* behavior in making the determination of mental disability. In contrast, other grounds for court-ordered treatment are defined as *behavioral impairments*.[2]

Consistent with the statute, we have held that the definition of persistently or acutely disabled does not require an overt act. *Matter of Cause No. MH–90–00566*, 173 Ariz. 177, 184, 840 P.2d 1042, 1049 (App.1992). There, the patient challenged the constitutionality of the statute because it requires only a substantial probability of harm rather than proven behavior or certainty of physical harm or illness. In upholding the validity of this statute, we stated:

> Other courts considering such an argument have concluded in a similar manner that statutes are constitutionally adequate even though they do not require an "overt act" before a mentally-ill person can be involuntarily confined. In [*Project Release v. Prevost*, 722 F.2d 960, 973–74 (2d Cir. 1983) ], the court was not convinced that the addition of an overt act requirement would reduce erroneous confinements and believed that the New York civil commitment scheme as a whole met minimum due process standards without the inclusion of an overt act requirement.... *See also* [*Colyar v. Third Judicial Dist. Court for Salt Lake County*, 469 F.Supp. 424, 434 (D.Utah 1979) ] (due process does not require that indications of incapability to make a rational treatment decision, and dangerousness to self and need of treatment be shown by recent overt act); [*In re LaBelle*, 107 Wash.2d 196, 728 P.2d 138, 144 (1986) ] (substantial risk of harm need not be shown by recent, overt acts). We agree that the statute *need not require an overt act* as long as the statutory scheme provides, as Arizona's does, that the finding of persistent or acutely disabled must be based on clear and convincing evidence of a substantial probability of harm as required by A.R.S. § 36–501(29) and § 36–540(A).

*Id.* (emphasis added).

Just as the petitioner need not present evidence of an overt act which demonstrates the patient's persistent or acute disability, the petitioner need not present evidence of current behavior to establish that disability.

Although current behavior is certainly not irrelevant to the patient's condition, it is neither the sole nor the essential indication of the statutory criteria, i.e. incapacity to make rational and informed treatment decisions and substantial probability of harm. In evaluating a patient's mental condition, physicians not only examine the patient's current behavior and statements, but also consider his treatment history and past behavior. Consideration of current behavior alone would be manifestly misleading. A patient may not display any current aberrant behavior because of intensive therapy, supervision, and medication and yet pose a danger of harm to himself because of inability to make

---

2. "Danger to self" means:

(a) *Behavior* which, as a result of a mental disorder, constitutes a danger of inflicting serious physical harm upon oneself, ...

(b) *Behavior* which, as a result of a mental disorder, will, without hospitalization, result in physical harm or serious illness to the person, ...

A.R.S. § 36–501(5) (emphasis added).

"Danger to others" means:

... the judgment of a person who has a mental disorder is so impaired that he is unable to understand his need for treatment and as a result of his mental disorder his *continued behavior* can reasonably be expected, on the basis of competent medical opinion, to result in serious physical harm.

A.R.S. § 36–501(4) (emphasis added).

"Gravely disabled" means:

a condition evidenced by *behavior* in which a person, as a result of a mental disorder, is likely to come to serious physical harm or serious illness because he is unable to provide for his basic physical needs.

A.R.S. § 36–501(15) (emphasis added).

treatment decisions if released from the therapeutically structured environment. Moreover, some patients, such as the one involved here, are behaviorally volatile. The mere fact that no aberrant behavior is occurring at the time of the hearing does not necessarily mean that no disability exists. Of course, many patients who respond favorably to treatment need not be subjected to continued court-ordered treatment. But this is a matter for medical opinion, and ultimately for the judgment of the court.

■ We hold today that the court may not require evidence of current behavior which manifests the patient's persistent or acute disability, so long as petitioner provides other clear and convincing evidence of the disability.

### III.

■ Although the trial court erred in requiring evidence of the patient's current behavior, we can sustain a decision correct in result, regardless of the underlying reasoning. *State v. Perez*, 141 Ariz. 459, 464, 687 P.2d 1214, 1219 (App.1984). We therefore will consider whether the evidence is sufficiently clear and convincing that the petition could have been granted. If not, we will affirm the trial court.

The degree of proof required for court-ordered treatment is fixed by statute. The evidence supporting court-ordered treatment must be "clear and convincing." A.R.S. § 36–540(A). This higher standard is necessary to protect the fundamental liberty interest at stake when a petition to compel confinement and medical treatment is filed. "The clear and convincing standard is reserved for cases where substantial interests at stake require an extra measure of confidence by the fact finders in the correctness of their judgment." *State v. Renforth*, 155 Ariz. 385, 387, 746 P.2d 1315, 1317 (App. 1987).

The statute also sets forth the type of proof required for court-ordered treatment. The evidence must include the testimony of two physicians who had examined the patient and of two or more witnesses acquainted with the patient at the time of the disability.

A.R.S. § 36–539(B). The physicians' testimony must describe the nature and extent of the disability. *Id.* Before ordering the patient to undergo treatment, the court must have clear and convincing evidence that: (1) the patient is persistently or acutely disabled, and (2) the patient is either unwilling or unable to accept voluntary treatment. A.R.S. § 36–540(A).

The evidence could be found to show that the patient is unwilling to accept voluntary treatment. The testimony of Dr. Torio, the two nurses, and the patient's social worker agree on this point. The patient insisted on discharging himself shortly after being placed on voluntary status. Moreover, he consistently denied having any mental disorder or substance abuse problem.

Whether the patient is persistently or acutely disabled is a more complex question. The court could find him to be so disabled if he has a mental disorder that:

(1) if untreated, has a substantial probability of causing the patient severe and abnormal harm;

(2) substantially impairs the patient's capacity to make an informed treatment decision; and

(3) has a reasonable prospect of being treatable by outpatient or inpatient treatment or a combination of both.

*See* A.R.S. § 36–501(29).

The evidence could be found to satisfy the first criterion. Both Dr. Torio's undisputed testimony and Dr. Shinkoda's affidavit indicated that the patient chronically suffered from bipolar affective disorder mixed with psychosis, and had a history of being medicinally noncompliant. Both physicians thought that if he were unsupervised, the patient would not comply with the recommended treatment. As a consequence, he would regress, becoming paranoid, aggressive and delusional, and behaving dangerously.

■ In order to fulfill the second criterion, ASH must prove, by clear and convincing evidence, that the patient was incapable of making an informed decision. In doing so, ASH must establish that the physicians who performed the evaluation of the patient had clearly explained to him the advantages and

disadvantages of accepting the recommended treatment, the alternatives to such treatment, and the advantages and disadvantages of such alternatives. *In re Alleged Mentally Disordered Person*, 175 Ariz. 221, 225, 854 P.2d 1207, 1211 (App.1993).

■ The patient argues that the trial court correctly dismissed ASH's petition because the physicians failed to explain to him the advantages and disadvantages of the recommended treatment, the alternatives to such treatment, and the advantages and disadvantages of such alternatives. Citing *Matter of Pima County Mental Health Serv.*, 176 Ariz. 565, 863 P.2d 284 (App.1993), ASH counters that the physicians need not engage in fruitless endeavors in order to satisfy the statute. In *Matter of Pima County Mental Health*, the two physicians attempted to discuss the treatment plan and alternatives with the patient, but he simply "got up and walked away." 176 Ariz. at 567, 863 P.2d at 286. This Court affirmed the trial court's finding of acute disability, stating:

> Although A.R.S. § 36–501(29)(b) requires a determination of whether a person has the capacity to understand and to express an understanding of treatment advantages, disadvantages and alternatives after the same are explained to that person, we do not believe that mental health officials must engage in a confrontation with a mentally ill patient or have the patient physically restrained in order to fulfill the letter of the requirement.

176 Ariz. at 568, 863 P.2d at 287.

In this case, Dr. Torio testified that she began to discuss the recommended treatment with the patient. The patient became vulgar, sarcastic, and "even like threatening" and Dr. Torio attempted to "redirect" him. Dr. Torio apparently terminated the discussion, explaining: "And, you know, when the patient's getting agitated I terminate the session."

The record is unclear whether further efforts would have been fruitless. We cannot

say that this record shows clearly and convincingly that the patient's "agitation" thwarted any attempt to discuss treatment alternatives. Some degree of resistance to treatment can be expected of some mental patients. The statute requires that the treatment be explained to the patients. This requirement can be excused only if the proof is clear and convincing that it was impracticable to do so.

The patient's actions which might render further explanation by the physician unnecessary include excessive verbal abuse, physical abuse, repeatedly walking away when the physicians attempt to discuss the matters, or nonresponsiveness. In this case, the record does not indicate that any of these occurred. It simply fails to show that the patient's reaction was so extreme as to frustrate Dr. Torio's attempt.[3] Vulgarity and sarcasm of unstated duration and degree are not enough. Statements or behavior—we cannot tell which from this record—which are *"like* threatening" but apparently not *actually* threatening are insufficient to establish clearly and convincingly that Dr. Torio could not explain the patient's treatment alternatives to him.

As for Dr. Shinkoda, he stated in his affidavit filed in support of ASH's petition for court-ordered treatment that the patient's judgment and insight were "very impaired particularly regarding [the] underlying disturbance and [the] need for continuing treatment." We note, however, that this affidavit consisted of a preprinted form with some blank spaces provided for additional explanation by the affiant. Under the section *"Persistently or Acutely Disabled,"* Dr. Shinkoda placed an "X" next to this preprinted statement:

> The patient has a severe mental disorder that meets all of the following criteria:
>
> .    .    .    .    .
>
> b. Substantially impairs the patient's capacity to make an informed decision re-

3. The dissent argues that the evidence was sufficient to show the futility of Dr. Torio's efforts. (Slip Opinion at 19–21). However, the dissent appears to rely on the patient's behavior at times other than Dr. Torio's attempt to explain the proposed treatment. Particularly in view of the medical evidence that the patient became "reasonably stable" after treatment at ASH, we fail to see how prior incidents show the impossibility of Dr. Torio's effort.

garding treatment and this impairment causes the patient to be incapable of understanding and expressing an understanding of the advantages and disadvantages of accepting treatment and understanding and expressing an understanding of the alternatives to the particular treatment offered after the advantages, disadvantages and alternatives are explained to the patient.

Dr. Shinkoda also included this explanation:

Explain: *Persisting acute delusional ideation and impaired insight and judgment renders patient unable to appreciate the reality of his disturbance and needs, and risks associated with noncompliance.*

From both the preprinted portion of the affidavit and Dr. Shinkoda's underlined explanation, it is not clear whether he actually formed his opinion concerning the patient's inability to make an informed decision *after* having explained to the patient the nature of the treatment and the alternatives available. This is an indispensable requirement. Contrary to the dissent, whether the physician explained the treatment is a matter of fact, not a matter of medical opinion. In sum, neither physician provided *clear and convincing evidence* of the second statutory criterion for disability.

We realize it may be more time consuming to draft affidavits which specifically address each individual patient's mental condition. However, marking the boxes on a preprinted affidavit next to conclusory statements may result in ambiguities and omissions which result in the affiant failing to supply the required clear and convincing evidence.[4] We must require clear and convincing evidence because the statute demands it. A.R.S. § 36–540(A). That this may entail time, preparation and care by the witness is simply concomitant with the evidentiary standard. As our supreme court recently said:

We realize it may be more difficult and time consuming to find acquaintances of some patients facing involuntary commitment [to testify]. *Because such proceedings may result in a serious deprivation of liberty, however, the statutory requirements must be strictly adhered to.*

*Matter of Alleged Mentally Disordered Person,* 889 P.2d at 1091 (emphasis added).

The dissent accuses us of suggesting that Dr. Shinkoda acted improperly or even illegally. (See Slip Opinion at 21). Nothing could be further from our true intentions. The question presented is simply whether the trial court had the clear and convincing evidence required to compel the patient to be subjected to medical treatment. We are scrutinizing the sufficiency of the evidence to support the trial court's judgment, not the physician's professional conduct.

It is the duty of judges and not doctors to assess the facts and make the decision about the patient's future. As we said in the context of a child custody decision:

The statute requires the court to weigh the evidence to determine the best interests of the child. A court may consider expert opinion in making such decisions, but a court can neither delegate a judicial decision to an expert witness nor abdicate its responsibility to exercise independent judgment.

*DePasquale v. Superior Court,* 181 Ariz. 333, 890 P.2d 628, 630 (App.1995).

The statute requires that we ensure that the evidence supporting court-ordered treatment is "clear and convincing." Because neither physician provided clear and convincing testimony that the disadvantages and advantages of the recommended treatment and the alternatives were discussed with the patient, or that an effort to do so would have been futile, ASH did not establish the patient's inability to make an informed decision. Thus, ASH could not establish the patient's

---

**4.** The dissent defends the use of the preprinted form affidavit. As the dissent suggests, however, much of the form merely parrots the statutory language. (See Slip Opinion at 23). Although it is possible to provide more than mere conclusions on this form, Dr. Shinkoda's affidavit offered no supporting findings or observations with respect to an essential requirement for court-

ordered treatment. In our opinion, the bare assertion that the statutory criterion was met, without any explication of the facts that show it was met, does not constitute "clear and convincing evidence." *See generally State v. Renforth, supra* (discussing "clear and convincing evidence" standard).

persistent or acute disability. Accordingly, we affirm the lower court's dismissal of ASH's petition.

TOCI, J., concurs.

EHRLICH, Judge, concurring in part, dissenting in part:

I join the majority regarding this court's jurisdiction as well as with the determination that the Mental Health Services Act, Ariz. Rev.Stat.Ann. ("A.R.S.") sections 36–501 *et seq.*, does not require clear and convincing evidence of current behavior demonstrating the patient's persistent or acute disability in cases where the petitioner provides other clear and convincing evidence of the disability. I respectfully dissent, however, from the majority's decision that this patient's persistent and acute disability was not sufficiently shown.

Section 36–540(A) required the trial court to find, by clear and convincing evidence, that (1) the patient was persistently and acutely disabled and (2) that he was either unwilling or unable to accept voluntary treatment. There is no real dispute as to the latter finding; the patient's consistent denial that he suffered from a mental disorder and refusal to accept needed medical treatment was clearly supported by the evidence.

"Persistently or acutely disabled" means a mental disorder which satisfies *all* of the following criteria:

(a) If not treated has a substantial probability of causing the person to suffer or continue to suffer severe and abnormal mental, emotional or physical harm that significantly impairs judgment, reason, behavior or capacity to recognize reality.

(b) Substantially impairs the person's capacity to make an informed decision regarding treatment and this impairment causes the person to be incapable of understanding and expressing an understanding of the advantages and disadvantages of accepting treatment and understanding and expressing an understanding of the alternatives to the particular treatment offered after the advantages, disadvantages and alternatives are explained to that person.

(c) Has a reasonable prospect of being treatable by outpatient, inpatient or combined inpatient and outpatient treatment.

A.R.S. § 36–501(29).

The majority agrees that the undisputed testimony provided by Drs. Torio and Shinkoda satisfied the first criterion. Inasmuch as both doctors asserted that any harm that would result would be due to unsupervised treatment and medication, the same evidence also fulfills the third criterion. Thus, I part company with the majority only on the issue of whether this very same evidence satisfied the second criterion. I believe that it does.

This court has explained that section 36–501(29)(b) "focuses on the mentally-ill individual's decision-making process rather than on the content of the decision." *In re Maricopa No. MH–90–00566*, 173 Ariz. 177, 184, 840 P.2d 1042, 1049 (App.1992); *accord In re Alleged Mentally Disordered Person*, 175 Ariz. 221, 225, 854 P.2d 1207, 1211 (App. 1993). In other words, the section focuses on two central issues:

(1) Whether the mentally-ill individual's ability to make an informed decision regarding treatment is substantially impaired; and

(2) Whether the individual is able to understand the treatment and treatment alternatives after the advantages and disadvantages of treatment and the alternatives to treatment, as well as their advantages and disadvantages, "are explained to that person."

*See Matter of Pima County Mental Health Serv.*, 176 Ariz. 565, 567, 863 P.2d 284, 286 (App.1993). In the present case, I believe that the clear and convincing evidence compels an affirmative response to both questions.

Examining the efforts which evaluating physicians must make to answer these questions, Division Two of this court, in affirming a finding of acute disability, held that, when the patient, diagnosed there as a paranoid schizophrenic with a long history of mental illness, evinces a noncooperative attitude and an unwillingness to communicate with psychiatrists, and behaves in a hostile, even threatening, manner, the "mental health officials

[need not] engage in a confrontation with ... or ... physically restrain [the patient] in order to fulfill the letter of [section 36–501(29)(b) ]." *Id.* at 568, 863 P.2d at 287.

The circumstances of this case are analogous. While not diagnosed as a paranoid schizophrenic, the patient had, at one time, been recognized as suffering from Schizophreniform Disorder and, at the times relevant to this appeal, was diagnosed as suffering from a bi-polar disorder with grandiose and paranoid delusions. Dr. Torio testified that her attempts to talk to the patient were met with vulgar and sarcastic remarks, as well as agitated and threatening behavior. She further stated that, whenever a patient became agitated, she concluded the session. Dr. Torio's statements confirm that this patient was unwilling to recognize his mental disorder and need to take medications, and hostile toward those who attempted to explain to him why treatment and medicinal stabilization were necessary. Further efforts on Dr. Torio's part to engage the patient as to his treatment and alternatives was unnecessary.

Unlike the majority, I do not find this record "unclear" as to whether the patient's reaction was "so severe that it thwarted any attempt to discuss treatment alternatives." To the contrary, the record is replete with examples of the patient's hostility toward the mention of his problems and the need for the medical and pharmacological interventions required to treat him. The record illustrates the patient's verbal abuse, threatening demeanor and nonresponsiveness, all qualities which, as the majority acknowledges, would "prevent the physicians from making any reasonable effort to fulfill the statutory [section 36–501(29)(b) ] requirement." Short of a physical confrontation with or physical restraint of this patient, and then with no guarantee of success, literal compliance with section 36–501(29)(b) was not possible and therefore should not be deemed necessary.

All of the expert evidence introduced at the hearing makes inescapable the conclusion that only two options existed for this patient: He could be treated in a supervised setting or he could be released, with the likelihood that he would stop taking his medication and once again become a danger to himself and others. The patient's long history of mental illness and his numerous involuntary hospitalizations all but confirmed the outcome of the latter alternative. Any existing doubt was erased by Drs. Torio and Shinkoda when they noted that the hospitalizations occurred after the patient left a supervised-treatment setting, began neglecting to take his medication and relapsed into substance abuse. Nothing in the record remotely disputes or even contradicts these assessments. In this case, then, section 36–501(29)(b) required only that the doctors explain to the patient that he needed supervised treatment. Given the patient's history and the likelihood of harm befalling him or others, no viable alternatives existed.

The majority, in examining the persuasiveness of Dr. Shinkoda's affidavit, also faults the use of pre-printed form affidavits. Specifically, the majority questions the lack of any other, objective evidence that the doctor formed his opinion *after* having explained the treatment and treatment alternatives to the patient. I find no such fault. With due regard for the liberty interests of mentally-ill individuals, I believe that the majority's concerns only serve to undermine the statutory role which the two evaluating physicians played in the process of petitioning for court-ordered treatment. *See* A.R.S. § 36–539(B).

As an initial matter, the implication that Dr. Shinkoda, or any other evaluating physician, formed his opinion without first explaining the nature of the treatment and treatment alternatives is, quite simply, an implication that he violated the law. This court rightly accords deference to the opinions and ethical standards of experts. Only when evidence calls the expert opinion into question are we more circumspect in our deference. *See DePasquale v. Superior Court (Thrasher),* 181 Ariz. 333, 890 P.2d 628 (App.1995). However, such is not the case here; the testimony and affidavits of Drs. Torio and Shinkoda are undisputed by any other credible medical evidence.

The pre-printed affidavit form, far from being the "rubber stamp" implied by the majority, is actually a quite thorough document. The form sets forth verbatim the

statutory requirements that the physicians must meet in order to prevail on a petition for court-ordered treatment. To say that the marking of an "X" on the form next to a pre-printed statement of section 36–501(29)(b) might result in ambiguities and omissions is to say that the doctors are, at best, unsure and, at worst, indifferent to their obligations under the statute. I will not, without some evidence to the contrary, blithely question the actions and opinions of these physicians. Moreover, there are other safeguards built into the document that should serve to satisfy the statute and the liberty concerns of the majority. For example, the requirement that the doctors explain their findings on the form, again under the specific requirements of subsection (b), provides a further assurance of their observance of the statutory mandates. Also, the form itself is not limited to a pre-printed statement of section 36–501(29); it totals six pages and requires the doctors to provide an exhaustive explanation of the patient's past history and evaluations, current diagnoses and treatments, and recommendations for future treatment. In sum, there is nothing in this record to indicate that the requirements of section 36–501(29)(b) were not "strictly adhered to." *Matter of Alleged Mentally Disordered Person*, 889 P.2d at 1091.

Court-ordered treatment for the mentally-ill is a balance between the equally compelling liberty interests of the mentally-ill individual and the state's interest in ensuring the safety of the individual and the public. The statutory scheme, reliant in large measure upon the expert opinions of evaluating physicians, is a thoughtful mechanism for balancing these concerns. To question the opinions of the medical experts, in the absence of conflicting evidence, upsets this statutory balance. I believe that the trial court erred in dismissing A.S.H.'s petition for court-ordered treatment and, therefore, respectfully dissent.