NOTICE: NOT FOR PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION DOES NOT CREATE
LEGAL PRECEDENT AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

_____

IN THE MATTER OF GARY P.

No. 1 CA-MH 13-0088
FILED 5-20-2014

_____

Appeal from the Superior Court in Mohave County
No.  S8015MH201300044
The Honorable Lee F. Jantzen, Judge

**AFFIRMED**

_____

COUNSEL

Mohave County Legal Defender's Office, Kingman
By Diane S. McCoy
*Counsel for Appellant*

Mohave County Attorney's Office, Kingman
By Dolores H. Milkie
*Counsel for Appellee*

---

**MEMORANDUM DECISION**

Judge Michael J. Brown delivered the decision of the Court, in which Presiding Judge Randall M. Howe and Judge Jon W. Thompson joined.

---

**B R O W N**, Judge:

¶1 Gary P. appeals the superior court's order for involuntary treatment entered after the court found he suffers from a mental disorder rendering him persistently or acutely disabled and a danger to himself or others. For the following reasons, we affirm.

## BACKGROUND

¶2 In November 2013, Gary contacted the police because he believed "someone was stealing guns from him." When police officers responded to his call, Gary became "hostile and threatening." As a result, he was initially transported to Kingman Regional Medical Center for "psychiatric stabilization," and later transferred to Mohave Mental Health Clinic.

¶3 Shortly thereafter, Calvin Flowers, M.D., Deputy Medical Director of Mohave Mental Health Clinic, filed a petition for court-ordered evaluation of Gary. The petition alleged reasonable cause to believe that Gary has a mental disorder and, as a result, is persistently or acutely disabled and a danger to himself or others. The petition explained that (1) Gary "has a history of psychosis with paranoid delusional thinking," (2) current examination "reveals continue[d] violent ideations and paranoia," and (3) Gary "has become uncooperative with inpatient evaluation and treatment [and] lacks insight into [the] nature of [his] psychosis" and corresponding need for treatment. Later that day, the superior granted the request for evaluation and appointed counsel to represent Gary.

¶4 After evaluating Gary, Dr. Flowers filed a petition for court-ordered treatment pursuant to Arizona Revised Statutes (A.R.S.) section 36-533. The petition (1) alleged that Gary has a mental disorder that renders him persistently or acutely disabled and a danger to himself and others; and (2) sought an order for combined inpatient and outpatient treatment pursuant to A.R.S. § 36-540(A)(2).

¶5          The petition included a November 27, 2013, affidavit of Dr. Flowers, his addendum, client progress notes, treatment plan, and recommendations. Based on his evaluation of Gary, Dr. Flowers opined that Gary is (1) suffering from a psychotic disorder not otherwise specified, (2) acutely or persistently disabled, and (3) a danger to himself and others. Dr. Flowers reported that Gary exhibits "acute psychotic agitation, marked mood disturbance, homicidal and suicidal ideation" and has "repeated[ly] threat[ened] to harm [himself] and others in the community."

¶6          Also attached to the petition was the affidavit of Laurence Seltzer, M.D. a psychiatrist at Mohave Mental Health Clinic. Dr. Seltzer also opined that Gary suffers from a psychotic disorder not otherwise specified. Dr. Seltzer reported that Gary was agitated and uncooperative with the interview; "[h]e instead hurled verbal profane expletives[.]" Dr. Seltzer also reported that Gary's thinking "was disjointed and maybe paranoid" and that Gary informed Dr. Seltzer he wanted to "be left alone." Noting Gary's physical disabilities ("difficulty in ambulating") and admitted pain, Dr. Seltzer concluded Gary is "unable to look after his own needs." Attached to Dr. Seltzer's affidavit were his addendum, client progress notes, and the social work evaluations of Jettie Blanton and Lauren Retzer-Greer, both of whom work for the Mohave Mental Health Clinic.

¶7          On December 3, 2013, the superior court held a hearing on the petition for court-ordered treatment. Initially, Gary, his attorney, and counsel for the State were present. The parties stipulated that Dr. Seltzer's affidavit would be admitted as his testimony. Gary's attorney informed the court that Gary wished to represent himself at the proceedings. After discussing the matter with Gary, the court denied his request for self-representation and Gary voluntarily left the hearing.

¶8          Dr. Flowers testified that based on his observations and evaluations, Gary suffers from a psychotic disorder not otherwise specified. He opined that Gary is a danger to himself because "[h]e believes that he is being targeted, persecuted, and he acts in a way that would endanger his physical health" and has repeatedly expressed thoughts of suicide. He further opined that Gary is a danger to others "because he feels he's being targeted by other people" and that "the police are out to get him[.]" To illustrate this point, Dr. Flowers explained that Gary was transported to Mohave Mental Health Clinic after he had made "threats of harm to himself and others," and, at the time Gary was taken into custody by police, he was in possession of numerous firearms and

substantial ammunition. Dr. Flowers further testified that Gary has "delusions" about firearms and the need to protect himself through force and opined that these "delusions" "represent[] a significant danger to the community." Finally, Dr. Flowers opined that Gary suffers from a mental disorder that renders him persistently or acutely disabled as demonstrated by Gary's inability "to make rational decisions" and his lack of "impulse control." Because Gary declined all voluntary treatment, Dr. Flowers recommended a treatment plan consisting of both inpatient and outpatient services designed to "reduce the level of delusional thought content."

**¶9** Following Dr. Flowers testimony, Carol Panaggio, a registered nurse, testified regarding her observations of Gary. She stated that at times, Gary has been "very cooperative," but at other times he has "tr[ied] to break things and threaten[ed] everybody[.]" She explained that "[i]f you try . . . to get him to calm down, he will try to strike out at you" and that Gary threatened "to come back and get us all" once he is released from the facility. Finally, Rick St. Germaine, a mental health services worker, testified regarding his observations of Gary. He testified that Gary has threatened to "get everybody in here" as soon as he is released.

**¶10** After the presentation of evidence and argument, the superior court found the State proved, by clear and convincing evidence, that Gary suffers from "a psychotic disorder that needs treatment." The court also found that Gary is persistently or acutely disabled and that he is a danger to himself and others. The court therefore ordered Gary to undergo inpatient and outpatient treatment for no more than 365 days, with the period of inpatient treatment not to exceed 180 days. This timely appeal followed.

## DISCUSSION

**¶11** Gary argues the superior court's order for involuntary treatment must be vacated because there was insufficient evidence to support the court's findings that he suffers from a mental disorder, that he is persistently or acutely disabled, or that he is a danger to himself or others.

**¶12** "We view the facts in a light most favorable to upholding the court's ruling and will not reverse an order for involuntary treatment unless it is clearly erroneous and unsupported by any credible evidence." *In re MH 2009-002120*, 225 Ariz. 284, 290, ¶ 17, 237 P.3d 637, 643 (App. 2010) (internal quotations omitted). To the extent Gary raises issues of

4

statutory interpretation, our review is de novo. *In re MH 2012-002480*, 232 Ariz. 421, 422, ¶ 5, 306 P.3d 78, 79 (App. 2013). We may sustain the superior court's decision if the result is correct, "regardless of the underlying reasoning." *In re MH 94-00592*, 182 Ariz. 440, 445, 897 P.2d 742, 747 (App. 1995).

¶13         The petitioner requesting a court order for treatment shall present, at the hearing on the petition, testimony of two physicians "who participated in the evaluation of the patient[.]" Pursuant to A.R.S. § 36-539(B):

> The physicians shall testify as to their personal observations of the patient. They shall also testify as to their opinions concerning whether the patient is, as a result of mental disorder, a danger to self or to others, is persistently or acutely disabled or is gravely disabled and as to whether the patient requires treatment. Such testimony shall state specifically the nature and extent of the danger to self or to others, the persistent or acute disability or the grave disability.

"[T]he testimony from each physician must be to a reasonable degree of medical certainty or probability as to the statutory elements before a court may find that the clear and convincing standard [required to order involuntary treatment] has been met." *In re MH 2007-001236*, 220 Ariz. 160, 169, ¶ 29, 204 P.3d 418, 427 (App. 2008). Under this rule, "[i]f one physician's opinion is sufficient and the other physician's opinion is insufficient, a court should not be able to find the statutory requirements were proven by clear and convincing evidence because the statute specifically requires the opinions of the two examining physicians, both of whom performed evaluations." *Id*. at 170, ¶ 32, 204 P.3d at 428. The testimonial requirement of A.R.S. § 36-539(B) may be satisfied, upon stipulation of the parties, by admitting the evaluating physicians' affidavits. *See also In re MH 2006-000490*, 214 Ariz. 485, 487-88, ¶ 9, 154 P.3d 387, 389-90 (App. 2007) ("In lieu of in-court testimony, a court may admit or take judicial notice of the physicians' affidavits appended to the petition.").

¶14         As defined in A.R.S. § 36-501(25), a mental disorder "means a substantial disorder of the person's emotional processes, thought, cognition or memory." Persistent or acute disability is defined as "a severe mental disorder" that, if not treated: (1) "has a substantial probability of causing the person to suffer . . . abnormal mental, emotional

or physical harm that significantly impairs judgment, reason, behavior or capacity to recognize reality;" (2) "[s]ubstantially impairs the person's capacity to make an informed decision regarding treatment;" and (3) "[h]as a reasonable prospect of being treatable by outpatient, inpatient or combined inpatient and outpatient treatment." A.R.S. § 36-501(32). A "danger to self" means behavior that, as a result of a mental disorder: (1) "[c]onstitutes a danger of inflicting serious physical harm on oneself . . . if the threat is such that, when considered in light of its context and in light of the individual's previous acts, it is substantially supportive of an expectation that the threat will be carried out," and (2) "[w]ithout hospitalization will result in serious physical harm or serious illness to the person." A.R.S. § 36-501(6). Finally, "danger to others" is defined as "the judgment of a person who has a mental disorder is so impaired that the person is unable to understand the person's need for treatment and as a result of the person's mental disorder the person's continued behavior can reasonably be expected, on the basis of competent medical opinion, to result in serious physical harm." A.R.S. § 36-501(5).

¶15        Gary contends that Dr. Seltzer's affidavit is deficient and, therefore, applying the testimonial requirements set forth in A.R.S. § 36-539(B), insufficient evidence supported the superior court's findings that Gary is persistently or acutely disabled and a danger to himself and others. Specifically, Gary argues that the court could only consider the single page titled "Affidavit" when reviewing Dr. Seltzer's affidavit pursuant to the stipulation.

¶16        At the outset of hearing, the parties summarily stipulated "that the affidavit of Dr. Seltzer would be admitted as his testimony." Neither the hearing transcript nor the hearing minute entry reflect that either party submitted an affidavit for the court's consideration contemporaneous to the stipulation. Rather, Dr. Seltzer's affidavit was already part of the court record as an attachment to the petition for treatment. The attachment to the petition for treatment included not only the notarized first page, but also his addendum, client progress notes, and the social work evaluations of Blanton and Retzer-Greer. When parties stipulate that the court may consider a document already included in the superior court record, it is incumbent on counsel to limit or qualify the stipulation if the entire document is not intended to be submitted for the court's consideration. Here, the parties presented an unqualified stipulation to the court and therefore the court could properly consider Dr. Seltzer's affidavit and the attached documents in evaluating the sufficiency of the evidence.

¶17        Dr. Seltzer's affidavit minimally addressed Gary's mental disorder, persistent or acute disability, and his danger to himself. Dr. Seltzer noted that Gary was agitated, in pain, and physically disabled. Dr. Seltzer also observed that Gary's thinking was disjointed and possibly paranoid, and opined that Gary is "unable to look after his own needs." Other than noting Gary threatened law enforcement officers and concluding that Gary "presents a danger to himself" given his "state of agitation" and lack of judgment, Dr. Seltzer's addendum and progress notes do not expand on the brevity set forth in the affidavit regarding Gary's mental disorder, persistent or acute disability, or danger to self.

¶18        Dr. Seltzer's affidavit, addendum, and progress notes do thoroughly explain, however, Gary's refusal to cooperate during the attempted examination. Dr. Seltzer reported that Gary "did not cooperate with the interview" and instead "hurled verbal profane expletives." Dr. Seltzer was unable to discuss treatment options with Gary because Gary was "unwilling to cooperate with the interview and listen to any explanation." Gary "did not allow a discussion of his need for treatment to take place. He covered his ears and made sounds." Gary did not want to make eye contact with Dr. Seltzer and requested that the light in his room remain off and covered his eyes. Dr. Seltzer noted that "[t]he fact that he refused to take part in any discussion . . . would lead one to believe that he is incapable of understanding." When Dr. Seltzer attempted to solicit cooperation by explaining that the evaluation was pursuant to a court order, Gary responded that Dr. Selzter could "stick the report up [his] a__." [1]

¶19        Based on this record, we conclude that Gary willfully refused to participate in the examination process. Although some resistance from patients "can be expected," a physician need not pursue examination when it would be futile to do so. *In re MH 2009-002120*, 225 Ariz. at 288, ¶¶ 11-12, 237 P.3d at 641. "[C]ertain actions by a patient, such as 'excessive verbal abuse, physical abuse, repeatedly walking away when the physicians attempt to discuss the matters or nonresponsiveness may render further explanation by the physician unnecessary.'" *Id.* at ¶ 11

---

[1]        The social work evaluations of Blanton and Retzer-Greer explained that Gary was initially hospitalized after threatening to kill police officers and shoot himself, and has subsequently been charged with aggravated assault on a police officer, endangerment, and disorderly conduct. Although attached to his affidavit, Dr. Seltzer did not specifically refer to the evaluations as part of the basis for his opinions.

(quoting *In re MH 94-00592*, 182 Ariz. at 446, 897 P.2d at 748); *see also In re MH-1140-6-93*, 176 Ariz. 565, 863 P.2d 284 (App. 1993) (upholding involuntary commitment order, although physicians were unable to explain the advantages and disadvantages of treatment alternatives to the patient, because mental health officials are not required to "engage in a confrontation with a mentally ill patient or have the patient physically restrained" in order to satisfy statutory requirements). The record does not reflect that Gary requested to see a different physician or that he was not advised of that right. *See In re MH 2009-002120*, 225 Ariz. at 289, ¶ 16, 237 P.3d at 642. Therefore, because Gary willfully refused to participate in the evaluation process with Dr. Selzter, we decline to vacate the treatment order on the basis that Dr. Selzter's affidavit was insufficient.

¶20  The superior court's findings that Gary suffers from a mental disorder rendering him persistently or acutely disabled and a danger to himself and others is supported by the record. Dr. Flowers testified regarding Gary's inability to make rational decisions and lack of impulse control, his "delusions" regarding firearms and his paranoia that he is being widely targeted, and his suicidal and homicidal ideations.[2] Based on the evidence provided at the hearing, we conclude that the court did not err in finding sufficient grounds for involuntary commitment.

## CONCLUSION

¶21  Based on the foregoing, we affirm the superior court's order of treatment.



Ruth A. Willingham · Clerk of the Court
FILED: MJT

---

[2]  To the extent Gary argues there is insufficient evidence to support the finding that he is a danger to others, we disagree. Dr. Flowers specifically testified that Gary suffers from paranoia, homicidal ideations and delusions regarding firearms and concluded that these conditions present a substantial threat of harm to the community.