152 P.3d 1201

**In re MH 2006–000749.**

**No. 1 CA–MH 06–0015.**

Court of Appeals of Arizona, Division 1, Department E.

Feb. 13, 2007.

As Corrected April 24, 2007.

Andrew P. Thomas, Maricopa County Attorney By Michael J. Massee, Deputy County Attorney, Phoenix, Attorneys for Appellee.

James J. Haas, Maricopa County Public Defender By Tennie B. Martin, Deputy Public Defender, Phoenix, Attorneys for Appellant.

## OPINION

JOHNSEN, Judge.

¶ 1 Appellant appeals from the superior court's May 1, 2006 order compelling her to undergo involuntary inpatient and outpatient mental health treatment. The order was issued following a hearing at which Appellant was not present. We hold that although a patient has the power to waive attendance at an involuntary treatment hearing, the patient's waiver is ineffective unless the superior court expressly finds that it is given knowingly and intelligently. Because we hold the evidence did not support the superior court's conclusion that Appellant knowingly and intelligently waived her right to be present, we remand for a new hearing on that issue.

## FACTUAL AND PROCEDURAL HISTORY

¶ 2 On April 17, 2006, a medical doctor and a clinical liaison petitioned the superior court for an involuntary mental health evaluation of Appellant. An application for involuntary evaluation and a pre-petition screening report accompanied the petition. The petition stated that there was reasonable cause to believe that Appellant was persistently or acutely disabled. According to the petition, Appellant demonstrated "poor judgment and insight," had "become extremely paranoid," was experiencing "auditory and visual hallucinations," and was psychotic. The petition stated that Appellant would not take her prescription medication because she thought it had been tampered with, would not eat because she believed the group home staff was putting chemicals in her food, believed she was being raped on a daily basis at her group home and wandered away from her group home. On April 18, 2006, the superior court issued a detention order for the evaluation of Appellant.

¶ 3 On April 24, 2006, after Appellant had been evaluated, another medical doctor filed a petition asking that Appellant be compelled to undergo treatment. The physician asserted that Appellant was persistently or acutely disabled and concluded that Appellant needed "further inpatient evaluation and stabilization of her psychotic illness." According to the physician's affidavit, Appellant had been diagnosed with schizoaffective disorder. During an interview, she told the physician she was being drugged, her medication was being poisoned, chemicals had been sprayed on her blankets, and people were coming into her group home and raping her. The physician described Appellant's thought process as "significant for paranoid thinking and delusions," and concluded that her concentration, insight and judgment were impaired. She stated that Appellant had "limited capacity to recognize reality secondary to her psychosis" and that her mental disorder limited her capacity to make an informed decision regarding treatment. She lacked insight into her mental illness, the physician said, and because she was refusing to take her medications, her psychosis was worsening.

¶ 4 An affidavit of yet a third physician also noted that Appellant believed her medication and food were being poisoned. Although Appellant reported experiencing visual and auditory hallucinations, she denied having been diagnosed with a mental illness. "The patient demonstrates extremely poor insight," the third doctor wrote. "The patient's judgment is also impaired." He concluded that Appellant was suffering from "an acute decompensation of a chronic psychotic disorder." He stated that Appellant was "suffering from paranoid delusionality and auditory and visual hallucinations," and was refusing medication and treatment. Like the second physician, he concluded that Appellant's mental disorder "substantially impair[ed]" her capacity to make an informed decision regarding treatment.

¶ 5 In response to the petition, the court issued a "Detention Order for Treatment and Notice" on April 25, 2006 that set a hearing pursuant to Arizona Revised Statutes ("A.R.S.") section 36–539 (2003) for May 1, 2006, at 10:30 a.m. Pursuant to the April 25 order, Appellant was detained in an annex to the Maricopa Medical Center pending the hearing on the petition for court-ordered

treatment. Even though she had been detained, however, Appellant did not appear for the May 1 hearing. Her court-appointed counsel told the court she did not have any information about why Appellant was not present.

¶ 6 On its own motion, the trial court called the court's transportation officer to testify about Appellant's absence. (The transportation officer delivers patients from the annex to court for hearings.) The transportation officer testified that he had spoken with Appellant in person at 7:45 a.m. the morning of the hearing. He testified that he asked Appellant if she knew "she was to attend court" that day, and that Appellant responded that she did know and that she would be attending. When the transportation officer returned just after 9:00 a.m. to take Appellant to court, Appellant started to walk with him but then asked him where they were going. He answered that they were going to court. According to the transportation officer, Appellant then stated: "Well, that's okay. But I can't go with you because I don't know you." The officer explained that he was the transportation officer, but Appellant again stated she could not go with him because she did not know him.

¶ 7 At that point, the officer asked Appellant if she had spoken to her public defender, and Appellant answered that she had not spoken to her public defender, any lawyers or any doctors. The officer then told Appellant she did not have to go to court if she did not want to, but that he was the person who would take her if she wanted to go. Appellant again said that she could not go with him because she did not know him.

¶ 8 Appellant's counsel argued that given the pending allegations about Appellant's mental condition, the court could not assume Appellant had voluntarily waived her right to be at the hearing. The court disagreed, and found Appellant had voluntarily waived her presence: "The real issue is under [A.R.S. § 36–539(B)] as the language of the statute says the patient ... shall be present. This Court has taken the ... position that I will

not force a person to come and aggravate any potentially already fragile situation.... I will find that [Appellant] has voluntarily waived her appearance here." Over the objection of Appellant's counsel, the court then ordered that the hearing "proceed in absentia." [1]

¶ 9 At the hearing, Appellant's counsel and counsel for the county agreed to submit the physicians' affidavits in lieu of their testimony. The court heard live testimony of two witnesses, a behavioral health agency case manager and a worker at Appellant's group home.

¶ 10 The case manager testified that Appellant had called her one morning to pick Appellant up from a bus stop where Appellant had spent the night. When the case manager picked Appellant up, Appellant said she had not taken her medication and that she had urinated on herself. The case manager testified that while at Appellant's residence, Appellant repeatedly asked her, "Can you smell that?" but the case manager could smell nothing. While at Appellant's residence, she told the case manager that a picture frame was emitting poisonous chemicals. The case manager took Appellant to a clinic to be assessed by her psychiatrist, where she observed Appellant smelling her pill box before she took her medication. The case manager also testified that Appellant had told her that she had broken her radio because "they kept calling her name [on] the radio."

¶ 11 The worker from Appellant's group home testified that Appellant believed her food was being poisoned and that other residents were trying to rape and kill her. The worker stated that she recently heard Appellant tell her caseworker she had not taken her medication for four days. She testified that the next evening, Appellant was screaming the 23rd Psalm while repeatedly slamming the refrigerator door shut, saying, "They're not going to kill me, they're not going to take me." The worker testified that when Appellant was asked whom she was talking to, Appellant replied, "Can't you see that I'm having a conversation and you're not

---

1. Neither side contended that Appellant was absent pursuant to A.R.S. § 36–539(C), which permits an involuntary treatment hearing to go for-

ward when medical reasons prevent the patient from being present.

part of it." She stated that when police officers responded to Appellant's room to have her turn her music down, Appellant told police that "men under her bed [were] trying to rape her."

¶ 12 After considering the evidence, the court found that Appellant was persistently or acutely disabled and ordered Appellant to be involuntarily treated in a combined inpatient/outpatient program for a period not to exceed 365 days. Appellant timely appealed the order. We have jurisdiction pursuant to A.R.S. §§ 12–120.21(A) (2003) and 36–546.01 (2003).[2]

## DISCUSSION

¶ 13 We review *de novo* the interpretation and application of a statute because they are questions of law. *See In re Maricopa County No. MH 2001–001139*, 203 Ariz. 351, 353, ¶ 8, 54 P.3d 380, 382 (App.2002). We will affirm the trial court's findings of fact unless they are clearly erroneous or unsupported by substantial evidence. *In re Maricopa County No. MH 94–00592*, 182 Ariz. 440, 443, 897 P.2d 742, 745 (App.1995).

¶ 14 Involuntary treatment by court order is "a serious deprivation of liberty." *In re Coconino County No. MH 1425*, 181 Ariz. 290, 293, 889 P.2d 1088, 1091 (1995); *cf. Vitek v. Jones*, 445 U.S. 480, 491, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980) (commitment to mental hospital "produces a massive curtailment of liberty").[3] "[B]ecause civil commitment constitutes a significant deprivation of liberty, the state must accord the proposed patient due process protection." *In re Maricopa County No. MH 90–566*, 173 Ariz. 177, 182, 840 P.2d 1042, 1047 (App. 1992). An adult who is the subject of a

proposed involuntary treatment order is "entitled to [a] full and fair adversary hearing[ ]." *Parham v. J.R.*, 442 U.S. 584, 627, 99 S.Ct. 2493, 61 L.Ed.2d 101 (1979) (Brennan, J., concurring in part and dissenting in part); *see also In re MH 2004–001987*, 211 Ariz. 255, 259–60, ¶ 20, 120 P.3d 210, 214–15 (App. 2005); *cf. O'Connor v. Donaldson*, 422 U.S. 563, 580, 95 S.Ct. 2486, 45 L.Ed.2d 396 (1975) (Burger, C.J., concurring) (due process must be afforded to patient in civil commitment proceeding).

¶ 15 The procedural requirements the legislature established to implement a patient's due-process rights in an involuntary treatment hearing in this state are set forth in A.R.S. § 36–539. Among other requirements, the statute provides that "[t]he patient and his attorney shall be present at all hearings...." A.R.S. § 36–539(B).[4]

¶ 16 Appellant argues that the statute's mandate that the patient "shall be present" requires that an involuntary treatment hearing may not take place without the presence of the patient, and that the superior court's decision in this case to go forward in her absence therefore violated her statutory right to due process. *See Coconino County No. MH 1425*, 181 Ariz. at 293, 889 P.2d at 1091 ("[S]tatutory requirements [in an involuntary commitment hearing] must be strictly adhered to."). The County contends that the statute granted Appellant the right to attend the hearing, but that she waived that right. As noted, the superior court found that Appellant had "voluntarily waived her appearance" at the hearing.

¶ 17 "If the language of a statute is clear and unambiguous, the court will apply the plain meaning of the language unless a plain

---

2. Appellant did not move to accelerate this appeal pursuant to Arizona Rule of Civil Appellate Procedure 29. Accordingly, the appeal was briefed and set for conference in the ordinary course.

3. "The loss of liberty produced by an involuntary commitment is more than a loss of freedom from confinement. It is indisputable that commitment to a mental hospital 'can engender adverse social consequences to the individual' and that '[w]hether we label this phenomena "stigma" or choose to call it something else ... we recognize that it can occur and that it can have a very

significant impact on the individual.' " *Vitek*, 445 U.S. at 492, 100 S.Ct. 1254 (quoting *Addington v. Texas*, 441 U.S. 418, 425–426, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979)).

4. Section 36–539 also provides that "the patient's attorney may subpoena and cross-examine witnesses and present evidence," that a verbatim record of all proceedings shall be kept and that the Arizona Rules of Civil Procedure shall apply to such hearings (unless inconsistent with the statute). A.R.S. § 36–539(B), (D).

meaning interpretation would lead to an absurd result or a result at odds with the legislature's intent." *Resolution Trust Corp. v. W. Techs., Inc.,* 179 Ariz. 195, 201, 877 P.2d 294, 300 (App.1994). Although the words "shall be present" in section 36–539(B) seem to require the patient's presence at all hearings, because the purpose of the statute is to grant the patient a right, the statute does not preclude the patient from waiving that right by voluntarily choosing not to appear at a hearing.

¶ 18 The intended beneficiary of a statute generally may waive the statute's benefit. *See Holmes v. Graves,* 83 Ariz. 174, 178, 318 P.2d 354, 357 (1957); *McClellan Mortgage Co. v. Storey,* 146 Ariz. 185, 188, 704 P.2d 826, 829 (App.1985). For example, a criminal law mandate that a defendant "shall be present" does not necessarily preclude a defendant from waiving an appearance. Arizona Rule of Criminal Procedure 27.8(b)(2) provides that a "probationer shall be present at the [probation revocation] hearing." In *State v. Canady,* 124 Ariz. 599, 606 P.2d 815 (1980), however, our supreme court held that a defendant who failed to appear for his probation revocation hearing had voluntarily waived his presence. *Id.* at 601–02, 606 P.2d at 817–18; *cf. State v. Amaya–Ruiz,* 166 Ariz. 152, 175, 800 P.2d 1260, 1283 (1990) (criminal defendant may waive right to be present at presentence hearing); *State v. Reed,* 196 Ariz. 37, 38, ¶ 3, 992 P.2d 1132, 1133 (App.1999) (criminal defendant may voluntarily waive right to be present at trial).

¶ 19 Our conclusion that section 36–539 does not foreclose a patient from waiving her appearance at an involuntary treatment hearing is buttressed by the fact that a contrary reading of the statute would lead to an absurd result. If the statute were interpreted to prohibit a patient from waiving the right to be present, a patient could avoid entry of an involuntary treatment order against her simply by refusing to attend the hearing, thereby stopping the statutory procedure in its tracks. We decline to countenance such an illogical result.

¶ 20 That Appellant had the power to waive her statutory right to attend the hearing does not dispose of the matter, however.

The general rule is that a waiver is not effective unless it is given voluntarily and intentionally. *Nahom v. Blue Cross & Blue Shield of Ariz.,* 180 Ariz. 548, 556, 885 P.2d 1113, 1121 (App.1994). The same rule applies to a patient's waiver of her right to attend a hearing on a petition to involuntarily detain her for treatment. *See Suzuki v. Quisenberry,* 411 F.Supp. 1113, 1129 (D.Haw. 1976) ("Waiver [of right to be present at commitment proceedings] is possible but is valid only upon acceptance by the court following a judicial determination that the person understands his rights and is competent to waive them or that the person is so mentally or physically ill as to be incapable of attending the proceedings."), *modified sub nom. Suzuki v. Yuen,* 617 F.2d 173 (9th Cir.1980); *Doremus v. Farrell,* 407 F.Supp. 509, 515 (D.Neb.1975) ("The subject [of a civil commitment proceeding] has a constitutional right to be present at the hearing unless he voluntarily, intelligently and knowingly waives it or his counsel waives it for him after a showing that he is incompetent, or the subject's conduct is so disruptive as to require his exclusion."); *Kendall v. True,* 391 F.Supp. 413, 419 (W.D.Ky.1975) (Due process requires patient's presence "unless the right is intelligently waived by himself and counsel, or unless ... after the patient has been brought to the place of hearing ... he should be removed from the hearing because his conduct is so disruptive that the proceeding cannot continue in any reasonable manner."); *In re Hop,* 29 Cal.3d 82, 171 Cal.Rptr. 721, 623 P.2d 282, 287 (1981) (in a civil commitment hearing, "[a] valid waiver must be both knowing and intelligent"); *Joehnk v. State,* 689 So.2d 1179, 1180 (Fla.Dist.Ct.App.1997) (waiver of presence at commitment hearing must be knowing, intelligent and voluntary); *In re Barbara H.,* 288 Ill.App.3d 360, 223 Ill.Dec. 738, 680 N.E.2d 471, 475 (1997) (patient may waive right to be present at commitment proceeding only if patient knows of her right to be present and the consequences of waiver) *aff'd in part and rev'd in part on other grounds,* 183 Ill.2d 482, 234 Ill.Dec. 215, 702 N.E.2d 555 (1998); *In re Jessee,* 744 S.W.2d 514, 515–16 (Mo.App.1988) (waiver of right to be present at competency hearing must be knowing and intelligent); *cf. Ques-*

*nell v. State*, 83 Wash.2d 224, 517 P.2d 568, 578 (1973) (discussing purported waiver of patient's right to a jury in a commitment proceeding: "in the absence of knowing consent by the person alleged to be mentally ill, a guardian ad litem may not waive any fundamental right relevant to the mental illness commitment proceeding"). This is so particularly where, as here, the right at issue is a due process right. *See State v. Evans*, 125 Ariz. 401, 402, 610 P.2d 35, 36 (1980) ("[C]ourts indulge every reasonable presumption against the waiver of fundamental constitutional rights.").

¶ 21 In *State v. Thompson*, 113 Ariz. 1, 545 P.2d 925 (1976), our supreme court rejected the appeal of a man diagnosed with a "schizoid personality" who was found competent for trial after a hearing at which the court took evidence from two court-appointed psychiatrists. *Id.* at 3, 545 P.2d at 927. A series of negotiations followed the competency hearing; the defendant then entered a guilty plea. *Id.* at 2, 545 P.2d at 926. On appeal, he argued that the court should have convened a second competency hearing prior to his change of plea. *Id.* at 3, 545 P.2d at 927. The supreme court noted that notwithstanding his diagnosis, the two court-appointed psychiatrists had agreed that the defendant's mental condition would not substantially impair his ability to make a competent decision to waive a constitutional right, and that the defendant had a rational, as well as factual, understanding of the consequences of his plea. *Id.*

¶ 22 The court in *Evans* affirmed the superior court's decision to permit a defendant diagnosed as a paranoid schizophrenic to waive counsel. 125 Ariz. at 404, 610 P.2d at 38. The "label" of defendant's diagnosis, by itself, "does not mean that [he] is unable to make competent choices," said the court. *Id.* at 403, 610 P.2d at 37. A psychiatrist who had examined the defendant in that case concluded that the defendant understood the nature of the proceedings against him and understood his constitutional rights well enough to ask to consult with a lawyer before making any statements to police. *Id.* Based on "a careful examination of the psychiatric reports and the testimony adduced at the

hearing on his competency to stand trial," the court agreed that the defendant "was competent to make the decision to waive counsel. . . ." *Id.*

¶ 23 These cases demonstrate that some mentally ill persons have the capacity to knowingly and intelligently waive a fundamental right. But not every mentally ill person may do so; it goes without saying, for example, that a person who is so mentally disordered as to be incompetent cannot knowingly or intelligently decide to waive such a right. *Id.* at 402, 610 P.2d at 36. And whether a waiver has been exercised knowingly and intelligently is particularly problematic in an involuntary treatment hearing such as this, which was ordered at the request of physicians who averred that the patient was so persistently or acutely disabled as a result of a mental disorder that she should be compelled to receive treatment.

¶ 24 A petition seeking court-ordered treatment necessarily alleges that the patient, "as a result of mental disorder, is a danger to self or to others, is persistently or acutely disabled or is gravely disabled" and "is unwilling to accept or incapable of accepting treatment voluntarily." A.R.S. § 36-533(A) (2003). Given that the purpose of an involuntary treatment proceeding is to assess allegations that a person suffers from a serious mental disorder that so significantly affects her that she is unwilling or incapable of accepting treatment, the superior court may not presume that a patient who is absent from her involuntary treatment hearing has knowingly and intelligently waived her right to be present.

¶ 25 Cases from other jurisdictions, along with *Evans* and *Thompson*, caution that the superior court must scrutinize carefully any contention that a mentally impaired person has waived a right such as that at issue here. In *Honor v. Yamuchi*, 307 Ark. 324, 820 S.W.2d 267 (1991), for example, the court held that due process requires that a person subject to a civil commitment hearing who chooses to proceed without counsel must do so intelligently, or the "waiver" is invalid. *Id.* at 270–71. "To determine that long-term custody is appropriate because the individual

lacks the capacity to comprehend impending dangers, finding at the same time there has been a knowing and intelligent waiver, is patently inconsistent." *Id.* at 271.

¶ 26 In *In re Click,* 196 Ill.App.3d 413, 143 Ill.Dec. 559, 554 N.E.2d 494 (1990), the court reversed a trial court order compelling a mental patient to undergo involuntary commitment/admission after it found that the trial court abused its discretion by not properly determining whether the person's waiver of counsel was informed and voluntary. *Id.* 143 Ill.Dec. 559, 554 N.E.2d at 499–500. "The very nature of the hearing, respondent's confusion and respondent's actions during the hearing should have made the court question whether respondent had the capacity to make an informed waiver of counsel." *Id.* 143 Ill.Dec. 559, 554 N.E.2d at 500; *see also In re Jessee,* 744 S.W.2d at 516–17 (reversing finding of incapacitation where court failed to ascertain whether subject's absence was an intelligent and knowing waiver of right to be present); *cf. In re Etter,* 134 Ohio App.3d 484, 731 N.E.2d 694, 698 (1998) (reversing permanent child custody order against mother who was "borderline mentally retarded" because trial court failed to ascertain that mother understood the charges and the consequences of proposed admission).[5]

¶ 27 The superior court commissioner in this case stated he was reluctant to "force" a patient to appear at an involuntary treatment hearing because of a concern about "aggravat[ing] any potentially already fragile situa-tion" with the patient. We appreciate the court's legitimate concern about the possible effect the proceeding might have on a patient's mental state, and as stated above, we agree that notwithstanding section 36–539(B), a patient may waive her right to be present at a hearing called under that provision. We hold, however, that a patient's purported waiver of her right to be present at a hearing called pursuant to section 36–539 is not valid absent an express finding by the court that the patient has knowingly and intelligently waived her right to be present.[6]

¶ 28 "The finding of voluntary absence, and, therefore, the existence of a waiver of the right to be present, is basically a question of fact." *State v. Bishop,* 139 Ariz. 567, 569, 679 P.2d 1054, 1056 (1984) (quoting *Brewer v. Raines,* 670 F.2d 117, 120 (9th Cir.1982)). "Whether a right has been waived is a question of fact for the trial court." *Goglia v. Bodnar,* 156 Ariz. 12, 19, 749 P.2d 921, 928 (App.1987). Because a waiver of rights requires the intent to waive be clearly shown, "[d]oubtful cases will be decided against waiver." *Id.*

¶ 29 The better practice in cases in which a court is called upon to assess whether a right has been voluntarily waived is to make specific findings. *Evans,* 125 Ariz. at 403, 610 P.2d at 37. If the patient appears at the outset of the hearing to explain her decision not to participate, the patient may be examined on the record as to her reasons for choosing not to participate and her understanding of the possible consequences there-

---

**5.** *See also Pate v. Robinson,* 383 U.S. 375, 384, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966) ("[I]t is contradictory to argue that a defendant may be incompetent, and yet knowingly or intelligently 'waive' his right to have the court determine his capacity to stand trial."); *Adams v. Wainwright,* 764 F.2d 1356, 1359 (11th Cir.1985) (no procedural bar against raising issue of mental incompetence for first time in post-conviction relief proceeding because it cannot be said that defendant knowingly waived competency hearing at trial or on direct appeal); *Commonwealth v. Santiago,* 579 Pa. 46, 855 A.2d 682, 692 n. 9 (2004) ("it would be virtually an oxymoron to say that an individual may have been incompetent to stand trial, but nonetheless competently waived this issue").

**6.** We do not mean to say that a patient who is unable to give a valid waiver but who becomes unduly agitated by the courtroom proceedings must be compelled, by restraints or otherwise, to remain in the courtroom. *See Suzuki,* 411 F.Supp. at 1130 (court may exclude a patient whose "presence makes it impossible to conduct the hearing in a reasonable manner"); *Doremus,* 407 F.Supp. at 515 (subject's conduct may be "so disruptive as to require his exclusion"); *Kendall,* 391 F.Supp. at 419 (patient may be removed upon a finding that "his conduct is so disruptive that the proceeding cannot continue in any reasonable manner"); *Bell v. Wayne County Gen. Hosp.,* 384 F.Supp. 1085, 1094 (E.D.Mich.1974) (court may exclude a patient whose "presence makes it impossible to reasonably conduct the hearing"); *see also* A.R.S. § 36–539(C) (involuntary treatment hearing may go forward when medical reasons prevent patient from being present).

of. If, as here, the patient is not present, third parties may be examined about the facts of the patient's apparent decision to waive her right to appear, about their understanding of that decision and about whether it was made voluntarily.[7]

■ ¶ 30 Although we are bound not to upset the superior court's finding of a voluntary waiver absent an abuse of discretion, *see Bishop*, 139 Ariz. at 569, 679 P.2d at 1056, we must remand this matter because of the absence of any evidence in the record to support the court's conclusion that Appellant voluntarily chose to waive her right to be present at the involuntary treatment hearing.

¶ 31 A.R.S. § 36–536(A) (2003) required that Appellant be personally served with notice of the hearing, but there is no evidence in the record that Appellant understood the nature of the proceeding or that she understood the significance of her failure to attend it.[8] Indeed, according to the evidence the court relied on in finding her to be persistently and acutely mentally disabled, Appellant demonstrated "poor judgment and insight," was psychotic and was experiencing "auditory and visual hallucinations." According to the physicians whose affidavits the court accepted at the hearing, Appellant's thought process "was significant for paranoid thinking and delusions" and her concentration, insight and judgment were impaired. She was said to lack insight into her mental illness, and had only "limited capacity to recognize reality secondary to her psychosis."

¶ 32 The only facts before the court that specifically related to Appellant's failure to appear at the hearing were those offered by the transportation officer, who testified that she told him that she would not accompany him to court because he was a stranger to her. Although Appellant acknowledged an awareness of some court proceeding and appeared to indicate a desire to attend, there was no evidence that she comprehended the nature of the involuntary treatment hearing or of her right to attend that hearing. Indeed, in response to the transportation officer's question, Appellant denied having spoken to any lawyer or any doctor.

¶ 33 Given the absence of any evidence that Appellant knowingly chose not to appear at her involuntary treatment hearing, and the wealth of evidence that her mental disorder significantly impaired her ability to know and assess reality, we hold that the superior court's ruling that Appellant voluntarily waived her right to appear at the hearing was not supported by substantial evidence. Because there was insufficient evidence to find Appellant had voluntarily waived her right to appear at the hearing, the hearing should not have gone forward in her absence.

## CONCLUSION

¶ 34 For the foregoing reasons we remand this matter to allow the superior court to conduct a prompt hearing to determine whether Appellant knowingly and intelligently waived her right to be present at the involuntary treatment hearing. If the court

---

7. This case does not require us to decide whether, in the absence of a valid waiver by the patient, the court may accept a waiver offered on behalf of the patient by counsel or guardian ad litem. *See French v. Blackburn*, 428 F.Supp. 1351, 1357–58 (M.D.N.C.1977) (approving statute permitting counsel for subject of involuntary commitment procedure to waive subject's right to be present at hearing); *Doremus*, 407 F.Supp. at 515 (counsel for incompetent person may waive patient's right to be present at hearing); *Lynch v. Baxley*, 386 F.Supp. 378, 388 (M.D.Ala. 1974) (permitting counsel to waive subject's presence at emergency detention probate cause hearing upon court's determination that subject is so mentally or physically ill as to be incapable of attending); *In re Link*, 713 S.W.2d 487, 496 (Mo.1986) (counsel may waive patient's right to be present, but only after court ascertains that

patient "is so disabled as to warrant counsel's acting in the individual's behalf"); *but see In re Jessee*, 744 S.W.2d at 516 (counsel for patient in competency hearing may not waive client's rights "unless the court agrees that the client's best interest is served"); *In re Etter*, 731 N.E.2d at 698–99 (guardian ad litem lacked authority to consent to waiver of mentally impaired person's fundamental rights); *Quesnell*, 517 P.2d at 577–78 (neither counsel nor guardian ad litem may waive fundamental right relating to commitment proceeding in absence of knowing consent of the patient).

8. Because of our remand, we do not reach Appellant's contention on appeal that she failed to receive the personal notice that section 36–536(A) requires.

determines that Appellant's absence was not the result of a voluntary waiver, it shall vacate the involuntary treatment order entered after the prior hearing.

CONCURRING: ANN A. SCOTT TIMMER, Presiding Judge and PATRICIA K. NORRIS, Judge.