IN THE

# ARIZONA COURT OF APPEALS

## DIVISION ONE

IN RE MH2015-003266

No. 1 CA-MH 15-0084
FILED 9-8-2016

Appeal from the Superior Court in Maricopa County
No. MH2015-003266
The Honorable Barbara L. Spencer, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Maricopa County Attorney's Office, Phoenix
By Anne C. Longo, Joseph Branco
*Counsel for Appellee*

Maricopa County Legal Defender's Office, Phoenix
By Anne H. Phillips
*Counsel for Appellant*

**OPINION**

Judge Kent E. Cattani delivered the opinion of the Court, in which
Presiding Judge Michael J. Brown and Judge Maurice Portley joined.

**C A T T A N I**, Judge:

**¶1**    Patient appeals the superior court's order committing him for
involuntary mental health treatment.  Patient argues that, because he did
not receive a statutorily required physical examination as part of his

psychiatric evaluations, the involuntary treatment order is invalid. In light of a 2012 statutory change authorizing a third-party to complete (or attempt) the physical examination portion of the psychiatric evaluation, and for reasons that follow, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

¶2 In March 2015, Patient accosted several neighbors, kicked in several doors, and took money from one neighbor's home; the neighbors and responding police officers noted that Patient seemed confused or mentally disturbed. He was arrested and charged with burglary, trespass, and disorderly conduct. The next month, while in jail on those charges, Patient attacked several detention officers without provocation, inflicting concussions, facial fractures, and other injuries. Patient was charged with multiple counts of assault and aggravated assault arising from this incident. During the criminal proceedings, Patient was found incompetent to stand trial. *See* Ariz. Rev. Stat. ("A.R.S.") § 13-4517; Ariz. R. Crim. P. 11.[1] The superior court ordered a Title 36 psychiatric evaluation, which led to these civil commitment proceedings.

¶3 Patient was evaluated by two psychiatrists, each of whom offered a probable diagnosis of schizophrenia and concluded that, because of the mental disorder, Patient was a danger to others and persistently or acutely disabled. During their separate in-person evaluations, both doctors noted that Patient was largely non-verbal, although he seemed to understand them and answered some questions. Although he denied having hallucinations, Patient was laughing to himself and seemed to be responding to internal stimuli throughout the interviews.

¶4 The physicians also reviewed records from Patient's Rule 11 evaluation, which described Patient's history of two voluntary hospitalizations for mental health treatment in the preceding two years. The records suggested that medication helped alleviate his symptoms, but that he did not take the medication consistently after leaving inpatient treatment. Both doctors noted that Patient had refused a physical examination (one clarified that he had refused in the "previous facility"), but also concluded that neither available records nor in-person observation suggested that Patient's psychiatric symptoms arose from a physical cause.

---

[1] Absent material revisions after the relevant date, we cite a statute's current version.

¶5        One of the doctors then filed a petition for court-ordered treatment, attaching affidavits from both psychiatrists.  After an evidentiary hearing, the superior court found Patient to be a danger to others and persistently or acutely disabled due to a mental disorder, and ordered combined inpatient and outpatient treatment for no more than 365 days, with inpatient treatment not to exceed 180 days.

¶6        Patient timely appealed, and we have jurisdiction under A.R.S. § 36-546.01.  Although Patient's appeal is arguably moot as the treatment order has since expired, we nevertheless consider the appeal because it presents an issue of state-wide importance that is capable of repetition and would otherwise evade review.  *See In re MH-2008-000867*, 225 Ariz. 178, 179, ¶ 1 (2010).

## DISCUSSION

¶7        Patient argues the superior court erred because he was involuntarily committed without a statutorily required physical examination as part of his psychiatric evaluation.  Because involuntary treatment strongly implicates a patient's liberty interests, "statutory requirements must be strictly construed and followed."  *In re MH 2008-002596*, 223 Ariz. 32, 35, ¶ 12 (App. 2009).  We review issues of statutory interpretation de novo.  *In re MH 2001-001139*, 203 Ariz. 351, 353, ¶ 8 (App. 2002).  But we review the facts underlying the civil commitment order in the light most favorable to upholding the superior court's judgment and will not set aside the court's factual findings unless clearly erroneous.  *MH 2008-002596*, 223 Ariz. at 35, ¶ 12.

¶8        The assessment of whether a patient's mental condition and need for treatment warrants a civil commitment order is based on a psychiatric evaluation by two physicians.  *See* A.R.S. §§ 36-501(11)(a), -533(B), -539(B), -540(A).  The requisite evaluation includes two statutorily defined facets: (1) the psychiatric portion, consisting of "[a] professional multidisciplinary analysis that may include firsthand observations or remote observations by interactive audiovisual media and that is based on data describing the person's identity, biography and medical, psychological and social conditions," and (2) "[a] physical examination that is consistent with the existing standards of care," either performed or reviewed by one of the evaluating physicians.  A.R.S. § 36-501(11)(a), (b); *see also* A.R.S. § 36-533(B).

¶9        Regarding the second requirement, until mid-2012, the statute required that both physicians conduct a complete in-person physical

examination assessing the patient's overall medical health. *See* A.R.S. § 36-501(14) (2012); *Pinal Cnty. Mental Health No. MH-201000029*, 225 Ariz. 500, 502, 503–04, 506, ¶¶ 9, 14–15, 21 (App. 2010). The Legislature thereafter amended the requirement to its current form, directing that just one of the two evaluators conduct or review the physical examination, and characterizing the examination as one "consistent with the existing standards of care" rather than a "complete" medical assessment. A.R.S. § 36-501(11)(b); 2012 Ariz. Sess. Laws, ch. 334, § 1 (2d Reg. Sess.). The modified physical examination requirement still allows the physicians to evaluate any link between the patient's condition and a potential physical (rather than psychiatric) cause. *See* A.R.S. § 36-533(B) (stating that physicians' affidavits "shall also include any of the results of the physical examination of the patient if relevant to the patient's psychiatric condition"); *see also MH-201000029*, 225 Ariz. at 503–04, ¶ 14.

¶10    The examination requirement may be excused if the patient refuses or other circumstances render compliance impracticable. *See In re MH2011-000914*, 229 Ariz. 312, 315, ¶¶ 10–11 (App. 2012). For instance, "excessive verbal abuse, physical abuse, repeatedly walking away . . . , or nonresponsiveness" may excuse further attempts to examine the patient. *Maricopa Cnty. Mental Health Case No. MH 94-00592*, 182 Ariz. 440, 446 (App. 1995). And the physicians need not proceed with the examination if to do so would trigger a confrontation or require physical restraints. *Pima Cnty. Mental Health Serv. Action No. MH-1140-6-93*, 176 Ariz. 565, 568 (App. 1993).

¶11    Here, both physicians completed the psychiatric portion of the evaluation based on an in-person interview with Patient, but neither personally attempted a physical examination. Both physicians affirmed, however, that Patient had refused a physical examination while in jail, and one doctor explained her understanding that the examination had been offered just one or two days before the evaluation. Unlike the version of the statute governing the cases on which Patient relies (*MH2011-000914*, *MH 94-00592*, and *MH-1140-6-93*), the current statute expressly authorizes the evaluators to rely on a third-party's examination (or here, attempted examination). *See* A.R.S. § 36-501(11)(b). Although Patient argues that the evaluators did not have an adequate basis to conclude he had actually refused a physical examination, the doctors' testimony was consistent with both records and testimony showing Patient's non-cooperation with any assessments or treatment throughout his time in jail.

¶12    Moreover, the physicians also testified that they declined to perform a physical examination based on Patient's agitated, largely non-verbal and uncooperative behavior during the psychiatric evaluations.

Although he answered questions occasionally, he remained largely unresponsive. *See MH 94-00592*, 182 Ariz. at 446. And Patient was already wearing restraints due to his previous volatile, aggressive behavior, and one of the physicians noted that Patient remained agitated and was pulling at his handcuffs during the evaluation. *See MH-1140-6-93*, 176 Ariz. at 568.

**¶13** Patient nevertheless compares the doctors' assessments here to the evaluation in *MH2011-000914*, which this court concluded was insufficient to support the treatment order. 229 Ariz. at 313, 315, ¶¶ 3, 10–11. But in that case, the evaluating physician abandoned any interaction with the patient after only two minutes because the patient asked for an attorney, and the patient did not otherwise refuse to participate in the interview or display any confrontational or aggressive behavior. *Id.*

**¶14** Here, in contrast, the physicians actually conducted the psychiatric portion of the evaluation (albeit not the physical examination), each spending 30 or 40 minutes interviewing and observing Patient. Their direct observations, in addition to the records of Patient's previous mental health treatment, provide a basis for their conclusions regarding Patient's mental disorder, as well as their opinions that Patient's psychiatric symptoms did not arise from a physical cause. *Compare id.* at 315, ¶ 12. And unlike the patient in *MH2011-000914*, Patient repeatedly refused to participate in assessments, and demonstrated unpredictable, violent behavior on multiple occasions, as well as agitated, paranoid behavior during the evaluation.

**¶15** Accordingly, the physicians' evaluations were sufficient to support the court's involuntary treatment order.

**CONCLUSION**

**¶16** We affirm the treatment order.

