NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

IN RE MH2018-00006

No. 1 CA-MH 18-0016
FILED 12-18-2018

Appeal from the Superior Court in Navajo County
No. S0900MH201800006
The Honorable David Joseph Martin, Judge *Pro Tempore*

**VACATED**

COUNSEL

Criss Candelaria Law Office P.C., Concho
By Criss E. Candelaria
*Counsel for Appellant*

Navajo County Attorney's Office, Holbrook
By Jason S. Moore
*Counsel for Appellee Changepoint Psychiatric Hospital*

_____

**MEMORANDUM DECISION**

Presiding Judge Jennifer M. Perkins delivered the decision of the Court, in which Judge Lawrence F. Winthrop and Judge Jon W. Thompson joined.

_____

**P E R K I N S**, Judge:

¶1        Appellant D.M. appeals the superior court's order for mental health treatment pursuant to Arizona Revised Statutes ("A.R.S.") section 36-540. D.M. argues there was insufficient evidence to support the court's treatment order and that the court prevented her from "properly" presenting evidence her psychological symptoms were the result of a physical condition. We agree that the statutorily required evidence was insufficient and vacate the order for civil commitment.

**FACTUAL AND PROCEDURAL BACKGROUND**

¶2        In January 2018, Appellee Changepoint Psychiatric Hospital ("Changepoint") petitioned the superior court to order a psychological evaluation of D.M. Several days later, Changepoint filed a petition for court-ordered treatment alleging D.M. was persistently or acutely disabled and required involuntary inpatient and outpatient treatment. The superior court held an evidentiary hearing on Changepoint's petition and ordered D.M. submit to a period of involuntary treatment by Changepoint, not to exceed 365 days, including up to 180 days of inpatient treatment at Changepoint's facility. D.M. appealed in February 2018, but we remanded the case to the superior court because no transcript of the January evidentiary hearing was available.

¶3        The parties stipulated to a narrative statement pursuant to Arizona Rule of Civil Appellate Procedure ("ARCAP") 11(d). According to the parties' stipulation, Dr. Tilyou, Dr. Worthen, Karen Alexander, Sandra Lewis, Loraine Showalter, and D.M. testified at the hearing. Dr. Tilyou, a psychiatrist, testified that he attempted to evaluate D.M. remotely using TeleMed, a video conference service, but was unable to do so. Nevertheless, Dr. Tilyou submitted an Affidavit of Examining Physician, which the court admitted as an exhibit at the January hearing.

¶4        According to Dr. Tilyou's summarized testimony and affidavit, Dr. Tilyou attempted to interview D.M. via TeleMed in an exam room at Changepoint hospital. When D.M. refused to come to the exam

room, Dr. Tilyou had a Changepoint technician bring a laptop to the "quiet room" where D.M. was sitting. Dr. Tilyou attempted to speak with D.M. but she walked away and returned to her room. The technician then went to D.M.'s room and attempted to speak with D.M. about the purpose of the evaluation. Dr. Tilyou's affidavit explains that D.M. insisted the technician leave and, when the technician began to explain the purpose of the evaluation at Dr. Tilyou's insistence, D.M. "began yelling that she had constitutional rights" and the technician left D.M.'s room. Dr. Tilyou made no further attempts to examine D.M. Instead, Dr. Tilyou submitted his affidavit based entirely on an examination of the written records from Summit Hospital, Changepoint, and Dr. Worthen. In his affidavit, Dr. Tilyou diagnosed D.M with psychosis and opined she was acutely or persistently disabled due to that psychosis.

¶5           Dr. Worthen also submitted an Affidavit of Examining Physician in which he opined that D.M. was acutely or persistently disabled due to psychosis. Dr. Worthen testified he had personally examined D.M. and, based on his evaluation and review of her medical records, had diagnosed D.M. with psychosis. Dr. Worthen further testified he participated in preparing a treatment plan for D.M., that D.M. had episodes at Changepoint hospital where she would slam doors, yell, use foul language, and once put a hole in a wall. Despite D.M.'s outbursts, Dr. Worthen indicated he had personally evaluated D.M. and that others, including a Changepoint physician's assistant and a Changepoint social worker, had also personally examined D.M.

¶6           D.M.'s half-sisters, Alexander and Showalter, testified to D.M.'s personal and family history, including D.M.'s prior work as a musician, her social media posts, and serious damage to D.M.'s personal property the two discovered when visiting D.M.'s home in December 2017. Alexander also testified that she and Showalter had D.M. execute a quit claim deed giving Alexander and Showalter her home. Alexander further testified that she and Showalter had been paying D.M.'s utility bills for several months prior to December 2017. Finally, Lewis, Changepoint's social worker, testified that she prepared the treatment plan for D.M. and had met with D.M. several times. After the parties filed their stipulated reconstruction of the record, we reinstated D.M.'s appeal.

## DISCUSSION

¶7           Governmental power to commit an ordinary citizen involuntarily to confined treatment in a mental hospital implicates a "massive curtailment of liberty" as well as the potential for "adverse social

consequences" and thus requires adequate due process protections. *Vitek v. Jones*, 445 U.S. 480, 491–92 (1980) (citations omitted). We do not review this application of Arizona's process lightly.

**¶8** A court shall order an individual to undergo involuntary treatment if it finds, by clear and convincing evidence, the individual is acutely or persistently disabled due to mental illness. A.R.S. § 36-540(A). We will affirm an involuntary treatment order supported by substantial evidence and will not set aside the superior court's findings unless they are clearly erroneous. *In re Appeal in Pima Cty. Mental Health Serv. Action No. MH-1140-6-93*, 176 Ariz. 565, 566 (App. 1993) (explaining we will affirm on substantial evidence); *In re MH 2006-000749*, 214 Ariz. 318, 321, ¶ 13 (App. 2007) (explaining we will set aside clearly erroneous or unsupported factual findings). Here, the record includes evidence from Dr. Worthen and D.M.'s half-sisters, as well as testimony from D.M. herself, which indicates D.M. was likely suffering from mental illness when the court entered its involuntary treatment order. However, D.M.'s actual mental status is not directly at issue; instead, D.M. has challenged Changepoint's statutory compliance with Arizona's involuntary commitment process.

**¶9** We review the interpretation and application of statutes *de novo*. *In re M.H. 2007-001236*, 220 Ariz. 160, 165, ¶ 15 (App. 2008). Moreover, we strictly construe the statutory requirements in civil commitment cases because, as noted, such proceedings could result in a serious deprivation of the appellant's constitutional liberty interests. *Id.*; *see also In re MH 2006-000490*, 214 Ariz. 485, 488, ¶ 10 (App. 2007). When the petitioner fails to strictly comply with the statutory requirements in an involuntary treatment case, the proceedings are void. *See In re Burchett*, 23 Ariz. App. 11, 13 (1975).

**¶10** A petition for court-ordered treatment is governed by A.R.S. § 36-533, which requires, *inter alia*, "affidavits of the *two* physicians who participated in the *evaluation* . . . ." (emphasis added). Section 36-533(B) further requires the physicians' affidavits to "describe in detail the behavior that indicates that the person, as a result of mental disorder . . . has a persistent or acute disability . . . and shall be based on the physician's *observations* of the patient *and* the physician's study of information about the patient." (emphasis added). As relevant here, an evaluation is "[a] professional multidisciplinary analysis . . . carried out by a group of persons consisting of not less than the following: (i) [t]wo licensed physicians . . . who shall examine and report their findings independently." A.R.S. § 36-501(12)(a). In this case, only Dr. Worthen observed and examined the patient.

¶11        In contrast, Dr. Tilyou did not observe the patient for any significant length of time and did not examine the patient. Instead, Dr. Tilyou based his affidavit on written records from Changepoint, including Dr. Worthen's examination. Thus, Dr. Tilyou did not independently observe or examine D.M. nor did Dr. Tilyou provide an independent report on D.M.'s condition, in violation of A.R.S. § 36-501(12) and § 36-533(B). *See M.H. 2007-001236*, 220 Ariz. at 166–67, ¶ 19 (explaining a doctor's affidavit does not meet the statutory requirements where the doctor concedes he could not perform a full psychiatric evaluation and did not, in fact, examine the patient); *see also In re MH2011-000914*, 229 Ariz. 312, 315, ¶ 10 (App. 2012) (holding that a "hurried attempt to interview" a patient does not constitute an examination of the patient and renders the doctor's affidavit deficient as a matter of law). Tellingly, Dr. Tilyou's affidavit includes several sections in which he notes he was "unable to assess" core aspects of D.M.'s mental health. For example, Dr. Tilyou noted he was "unable to adequately assess" D.M.'s emotional process, "unable to fully assess" her thought and cognition, and "unable to assess" her memory. Given our strict adherence to statutory compliance in this area, significant gaps in Dr. Tilyou's affidavit, and Dr. Tilyou's failure to independently examine and report on D.M.'s condition, we hold that his affidavit is insufficient under § 36-533(B).

¶12        Changepoint asserts that Dr. Tilyou made three attempts to meet with D.M., however, the record, including Dr. Tilyou's affidavit, contradicts this assertion. Dr. Tilyou attempted to examine D.M. remotely and, when she would not come to the examination room, had a technician bring a laptop to D.M. in a "quiet room." When D.M. left the "quiet room" and went to her own room, Dr. Tilyou had the technician follow D.M. with the laptop. It is unclear from the record exactly how long Dr. Tilyou persisted in his examination attempt, but it is clear that the entire episode occurred over a continuous period on a single day. Dr. Tilyou did not attempt to examine D.M. at any other point in that day or on another day. Moreover, contrary to Changepoint's assertion, the record does not indicate that D.M. affirmatively rejected a second examination, only that she became distressed after a technician carrying a laptop followed her around the hospital and into her room.

¶13        Changepoint contends that Dr. Tilyou did not have to make additional attempts to examine D.M. because of her resistance during his apparently brief attempt to examine her. Relying on *In re Appeal in Pima Cty. Mental Health Serv. Action No. MH-1140-6-93*, Changepoint argues that the law does not require a physician to "engage in a confrontation with a mentally ill patient or have the patient physically restrained" to conduct a

psychiatric evaluation. 176 Ariz. 565, 567–68 (App. 1993). *MH-1140-6-93* explored the statutory requirement that a patient be informed about treatment options and alternatives with respect to a non-compliant patient who repeatedly thwarted multiple attempts at this communication. The *MH-1140-6-93* court, in creating this exception to the statutory requirement to inform the patient, did not contemplate its extension to the separate statutory mandate that the patient's mental health be independently examined by two physicians.

**¶14** Unlike the express statutory examination requirements in § 36-501(12), the requirement that a patient be informed of advantages, disadvantages, and alternatives to proposed treatment stem from former § 36-501(29) (currently § 36-501(32)(b)). Section 36-501(32)(b) provides that a person is persistently or acutely disabled if, in relevant part, they suffer from a severe mental disorder that "causes the person to be incapable of understanding and expressing an understanding of the advantages and disadvantages of accepting treatment" after being informed of those advantages and disadvantages. Such incapacity could be discerned by physicians examining a patient pursuant to § 36-501(12) and thus, physicians could potentially comply with the statute without successfully discussing the matter with a hostile patient. *See MH-1140-6-93*, 176 Ariz. at 567–68. It is unclear how a physician could independently ascertain the presence or absence of severe mental illness in a person absent an examination or, at a minimum, significant observations of an uncooperative patient.

**¶15** Similarly, in *In re MH2015-003266*, we held that the physical examination requirement may be excused in a case where a patient had refused physical examination two days prior to his psychiatric examinations, while incarcerated. 240 Ariz. 514, 516, ¶¶ 10–12 (App. 2016). In that case, we affirmed a treatment order where the affiant physicians had failed to even attempt a physical examination of the patient but "both physicians completed the psychiatric portion of the evaluation based on an in-person interview." 240 Ariz. at 516, ¶ 11. The physicians testified that the patient was "agitated, largely nonverbal and uncooperative [] during the psychiatric evaluations." *Id.* at ¶ 12. They also testified the patient was "wearing restraints due to his previous volatile, aggressive behavior" and that during one of the interviews the patient "was pulling at his handcuffs." *Id.* From the record in *In re MH2015-003266*, it is clear that the patient refused a physical examination and was openly hostile, to the point of dangerousness, to his examining psychiatrists.

¶16 Our holding in *MH2015-003266* is consistent with prior case law excusing compliance with physical examinations. Further, and key to this decision, that holding indicates that excusing compliance with the core psychiatric examination requirements of § 36-533(B) and § 36-501(12) would be a fundamental expansion of our prior holdings. Despite significant resistance by the patient in *MH2015-003266*, the physicians in that case were able to meet the core requirements of the statutory scheme by completing two independent psychiatric examinations of the patient. This is not to say a patient can avoid a mental health treatment order in perpetuity by repeatedly frustrating efforts to complete the required examinations; that situation is not before us. Ultimately, because we require strict statutory compliance in involuntary mental health treatment cases, close cases should be resolved in favor of the individual's fundamental liberty interests and not the government's attempts to severely curtail those interests. *See In re Burchett*, 23 Ariz. App. at 13 (holding a mental health treatment order void absent strict statutory compliance).

¶17 In any event, the record here does not suggest Dr. Tilyou would have needed to "engage in a confrontation" to conduct a psychiatric examination of D.M. Dr. Worthen, Lewis, and a physician's assistant had all successfully met with D.M. at various times in the days preceding Dr. Tilyou's attempted examination. Given these successful interactions and Dr. Tilyou's fleeting attempt, the record does not demonstrate that D.M.'s behavior made additional attempts to conduct an examination futile.

¶18 Dr. Tilyou did not conduct an independent examination in accordance with § 36-533(B) and § 36-501(12). Consequently, Dr. Tilyou submitted an affidavit devoid of key descriptions of observed behavior supporting his conclusion that D.M. was persistently or acutely disabled. Dr. Tilyou's affidavit did not comply with the statute and the evidence was accordingly legally insufficient to order involuntary treatment. *Cf. Matter of Commitment of Alleged Mentally Disordered Person*, 181 Ariz. 290, 293 (1995) (noting, in the context of a different component of the evaluation requirement, that "the statute is tightly drawn to avoid situations such as this, where the patient appears to have been committed primarily on the opinion and observations of one psychiatrist.").

## CONCLUSION

¶19         Based on the foregoing, we vacate the treatment order.



AMY M. WOOD • Clerk of the Court
FILED:  AA