NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

IN RE: DANIEL G.

No. 1 CA-MH 21-0028
FILED 2-22-2022

Appeal from the Superior Court in Coconino County
No. S0300MH202100085
The Honorable Cathleen Brown Nichols, Judge

**AFFIRMED**

COUNSEL

Coconino County Public Defender's Office, Flagstaff
By Sandra Diehl
*Counsel for Appellant Daniel G.*

Coconino County Attorney's Office, Flagstaff
By Mark D. Byrnes
*Counsel for Appellee The Guidance Center*

**MEMORANDUM DECISION**

Judge Samuel A. Thumma delivered the decision of the Court, in which Presiding Judge Maria Elena Cruz and Judge Michael J. Brown joined.

**T H U M M A**, Judge:

¶1    Daniel G. appeals from the superior court's order involuntarily committing him to a mental health facility under Arizona Revised Statutes (A.R.S.) § 36-540 (2022).[1] Because he has shown no error, the order is affirmed.

## FACTS AND PROCEDURAL HISTORY

¶2    Daniel is 62 years old and has a long history of significant behavioral health issues. In 2008, he was involuntarily committed for treatment. *See In re Daniel G.*, No. 1 CA-MH 08-0009, 2008 WL 3879809 (Ariz. Ct. App. Aug. 19, 2008). Since then, he has been hospitalized for behavioral health issues several times. He has been prescribed long-acting antipsychotic medication to help provide stability.

¶3    Daniel's behavioral health issues have led to multiple confrontations with law enforcement, resulting in arrests. On April 22, 2021, Summer Wolfe, a mental health guidance clinician at The Guidance Center (TGC), sought a court-ordered evaluation. The next day, Dr. Courtney Keckich, a TGC psychiatrist, petitioned for an evaluation. The superior court ordered an inpatient evaluation and appointed an attorney to represent Daniel.

¶4    On April 28, after evaluating Daniel, Dr. Francis Gagliardi, a TGC psychiatrist, petitioned for court-ordered treatment under A.R.S. § 36-533. The petition was supported by written evaluations by Gagliardi and Keckich as well as attestation letters by two service providers. The petition alleged Daniel was suffering from a mental disorder, was a danger to others and was persistently or acutely disabled, was not accepting treatment voluntarily and sought a court order requiring him to undergo treatment.

¶5    At a May 6 hearing, held remotely given the COVID-19 pandemic, Daniel, his attorney and counsel for the State participated. As the hearing began, Daniel's attorney said that Daniel wanted a new attorney, but if that request was denied, the attorney was prepared to proceed. Daniel said he was "going to read and get due process and save you a lot of time," adding that it "will only take" half of the 30 minutes allocated for the hearing. He then referenced getting "the tape of being

---

[1] Absent material revisions after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated.

punched in the nose" and "perjury, as to even hearsay" by a doctor, adding "I contend this is enough for new legal defender and new judge." When the court said "what is your reason for wanting –," Daniel interrupted stating, "I'm prosecuting you" as well as his attorney. When the court responded, "can I ask you a question so I can answer your concerns, okay?", Daniel responded "Again, I will repeat." The court then told Daniel not to repeat and said, "I've got to get going on the hearing." After another exchange, when Daniel would not allow the court to ask a question, Daniel left the hearing and did not return.

¶6        The court then said it "never got far enough to ask" why Daniel wanted new counsel, adding "I never got to get a word in edgewise" and that Daniel "just kept screaming and yelling at me and now he's left the room. So I view that as him absenting himself from the hearing." The court denied Daniel's request for a new attorney as unsupported and denied his request for a new judge.

¶7        The parties stipulated the doctors were experts and that their affidavits, the attestation letters and a medication report were admissible. Keckich testified that, based on her observation and evaluation, Daniel suffered from schizophrenia, was a danger to others and is persistently or acutely disabled. She testified that, in the three days before the hearing, Daniel received Haldol, Ativan and Benadryl, and that the medications would not impair Daniel's ability to participate in the hearing. Keckich said she tried without success to explain to Daniel the advantages and disadvantages of treatment and medications.

¶8        Gagliardi testified that, based on his observation and evaluation, Daniel suffers from paranoid schizophrenia, is persistently or acutely disabled and is a danger to others. Gagliardi testified that, in the three days before the hearing, Daniel received Haldol, Ativan and Lorazepam, and that the medication would not impair Daniel's ability to participate in the hearing.

¶9        Daniel's counsel cross-examined Keckich but had no questions for Gagliardi. No other evidence was offered. After hearing closing arguments, the court found by clear and convincing evidence that the State had shown Daniel "suffers from mental-health disorders specifically schizophrenia," needed treatment and was persistently or acutely disabled and a danger to others. The court ordered that Daniel be treated in inpatient and then outpatient treatment for not more than 365 days. This court has jurisdiction over Daniel's timely appeal pursuant to A.R.S. §§ 36-546.01 and 12-2101(A)(10).

**DISCUSSION**

**¶10** This court will affirm an involuntary mental health treatment order if it is supported by substantial evidence. *In re MH 2008–001188*, 221 Ariz. 177, 179 ¶ 14 (App. 2009). This court "view[s] the evidence in the light most favorable to sustaining the order," and will not set aside the findings unless they are clearly erroneous. *Cimarron Foothills Cmty. Ass'n v. Kippen*, 206 Ariz. 455, 457 ¶ 2 (App. 2003); *see also In re MH 2008–001188*, 221 Ariz. at 179 ¶ 14.

**I.     Daniel Has Not Shown a Denial of His Due Process Rights.**

**¶11** Daniel contends his due process rights were denied because the court: (1) did not allocate sufficient time for the hearing or allow Daniel to present evidence; (2) erred in denying his request for a different attorney; (3) improperly proceeded with the hearing without Daniel knowingly and intelligently waiving his right to be present and (4) was not presented with proper evidence of all medications Daniel received three days before the hearing. The court addresses these arguments in turn.

**A.     Daniel Has Not Shown the Court Failed to Allocate Sufficient Time for the Hearing or Prevented Him from Presenting Evidence.**

**¶12** Daniel argues the hearing was unreasonably short and that he was not allowed to present evidence. The record, however, is to the contrary. Working on a tight statutory timeline, A.R.S. § 36-535(B) (requiring hearing be held not more than six business days after the petition is filed), the court set the hearing to start at 4:30 p.m., suggesting the hearing would last for 30 minutes. The record reveals no objection about the length of the hearing before or during the hearing. Daniel's counsel cross-examined Keckich and had a chance to cross-examine Gagliardi. Although authorized to call witnesses, Daniel's counsel said "I do not have any witnesses" to call. Nor did Daniel's counsel offer any exhibits. The hearing lasted from 4:32 p.m. to 5:05 p.m., which included the court's detailed findings in granting the petition.

**¶13** Daniel has shown no other evidence he wished to offer or how the time allocated failed to afford him due process. Although relying on *Volk v. Brame*, Daniel has not shown the court purported to assess witness credibility "without taking any sworn testimony." 235 Ariz. 462, 466 ¶ 11 (App. 2014). On this record, Daniel has not shown that the court failed to allocate sufficient time for the hearing or prevented him from presenting evidence.

**B.      Daniel Has Not Shown the Court Erred in Denying His Request for Appointment of New Counsel or His Attempt to Request a Notice of Change of Judge.**

**¶14**      Daniel next argues that he was denied due process because the court did not follow the "proper steps for considering a change of counsel." Daniel concedes, however, that he had the burden to show an irreconcilable conflict with counsel or a completely fractured relationship. The record shows no such issue here.

**¶15**      The court asked Daniel several questions to determine the basis for his request for new counsel. Daniel, however, did not respond to those questions, instead addressing other matters. After the court made several more attempts, Daniel left the hearing. After he left, the court noted Daniel had the chance to provide a basis but failed to do so. Because the record revealed no irreconcilable conflict or a completely fractured relationship, *cf. State v. Johnson*, 247 Ariz. 166, 208 ¶ 179 (2019), Daniel has shown no error in the court denying his request for new counsel.

**¶16**      Daniel also argues that the court failed to address his attempted verbal notice of change of judge. *See* Ariz. R. Civ. P. 42.1. Even presuming that such a notice applies in mental health cases and can be verbal, *but see* Ariz. R. Civ. P. 42.1(b)(1) (requiring "a written notice"), Daniel has shown no error. A party waives the right to a notice of change of judge if "a scheduled contested hearing begins." Ariz. R. Civ. P. 42.1(d)(4). Because the purported notice was made after the hearing began, there was no error in denying it.

**C.      Daniel Waived His Right to Be Present at the Hearing by Voluntarily Leaving.**

**¶17**      By statute, Daniel and his attorney had a right to be present at the hearing. A.R.S. § 36-539(B). Daniel, however, decided to leave the hearing. On appeal, Daniel argues that, in leaving, he did not voluntarily and intentionally waive his right to be present at the hearing. *In re MH 2006-000749*, 214 Ariz. 318, 322 (App. 2007). Again, Daniel has shown no error.

**¶18**      Daniel decided to leave the hearing while court was in session, on the record and after an interaction where Daniel "just kept screaming and yelling at" the court. Although Daniel appeared, his voluntary absence precluded the court from asking him about his "reasons for choosing not to participate and [his] understanding of the possible consequences thereof." *Id.*, 214 Ariz. at 324 ¶ 29. This is not a case where the court found the patient did not want to attend based on information

provided by others and not the court's own observation. *Id.* at 325 ¶ 32 ("The only facts before the court that specifically related to Appellant's failure to appear at the hearing were those offered by the transportation officer."). The court also made findings about Daniel's decision to leave, reflecting that he "chose to absent himself from the remainder of the hearing after making his statement. So he had the ability to participate in the hearing today and chose not to participate in the whole hearing." On this record, Daniel has shown no error in the court proceeding in his absence. *Id.*

### D. The State Provided Adequate Evidence of Daniel's Medications.

**¶19** Daniel next argues the court violated A.R.S. § 36-539(A), which requires evidence of all drugs Daniel received during the three days right before the hearing. The court received into evidence a document listing the start dates of various medications. Keckich and Gagliardi testified about the specific drugs Daniel took within the three days before the hearing. While Keckich and Gagliardi's medication testimony was inconsistent, both testified that the medications Daniel had taken would not interfere with his ability to participate in the hearing. Daniel has not shown legal authority that factual testimony on this point, or any other, from two different witnesses must be identical to support the court's finding. Nor was this testimony addressed during cross-examination or in closing arguments. Daniel has shown no error in applying A.R.S. § 36-539(A).

### II. The Court Properly Concluded Clear and Convincing Evidence Supported the Commitment Order.

**¶20** Daniel argues that Keckich and Gagliardi's evaluations were incomplete in three specific ways: (1) only one psychiatrist evaluated Daniel without observing him; (2) neither psychiatrist physically examined Daniel and (3) Daniel was not properly advised of treatment alternatives. *See* A.R.S. §§ 36-533(B), -539(B) and -501(12).

**¶21** Daniel did not object to the affidavits or testimony provided by both witnesses. The pre-hearing affidavits set forth facts supporting the petition based on an examination of, and study of information about, Daniel. The affidavits provide a detailed evaluation of Daniel's medical history and diagnosis in compliance with A.R.S. § 36-533(B).

¶22 Because Keckich had limited access to him, Daniel argues it was unclear how much her evaluation was based on observations. The record shows Daniel refused to interact with Keckich despite multiple attempts. Keckich, however, testified that she observed Daniel many times in the past. Keckich based her diagnosis on his "numerous prior psychiatric hospitalizations . . . that were months-long," her "many prior encounters with" him "showing the severity of his delusions and the provocative behaviors that make it impossible for him to function in society," his "behaviors leading to situations in which his own life is in danger [which] makes him a danger to himself" and his "aggression towards others and numerous threats [which] are a danger to others." Keckich found these behaviors show that Daniel has been "persistently and acutely disabled for many years." This testimony, along with Keckich's affidavit, properly allowed the court to find the State made the required showing by clear and convincing evidence. *See* A.R.S. § 36-539(C).

¶23 Daniel next argues a physical examination was required but was not performed. A patient is to undergo a physical examination "if relevant to the patient's psychiatric condition." A.R.S. § 36-533(B). Although typically required, a physical examination may be excused if the patient refuses or if it is otherwise impracticable. *See In re MH 2015-003266*, 240 Ariz. 514, 516 ¶ 10 (App. 2016). A doctor also need not conduct the physical examination if doing so would trigger a confrontation. *Id.*

¶24 Daniel refused a physical examination by Keckich or Gagliardi. Because Daniel's psychiatric condition is not a result of any physical condition and can only be treated with medication, no physical examination was required. *Id.* Moreover, Daniel's conduct suggests such an examination would have triggered a physical confrontation, another reason excusing that obligation. *See id.* at 516 ¶ 10.

¶25 Daniel's final argument is that Keckich did not sufficiently describe to him the advantages and disadvantages of treatment, a statutory prerequisite to court-ordered treatment. A.R.S. § 36-501(32)(b). Keckich, however, testified that she advised Daniel about the recommended medications and the negative consequences associated with not taking them. Keckich also testified to trying to discuss the consequences of receiving treatment, adding that her ability to meaningfully do so was "quite limited by his own mental illness." Keckich and Gagliardi both testified that Daniel's mental illness causes him to be incapable of understanding the advantages and disadvantages of accepting treatment. This record contains far "more than a physician's opinion that an individual suffers from a mental disorder that impairs that person's ability to make an

informed decision about treatment." *In re MH 91-00558*, 175 Ariz. 221, 225 (App. 1993). On this record, Daniel has shown no error.

**CONCLUSION**

¶26     The superior court's order is affirmed.

