IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

In the Matter of Guardianship of:

JOSEPH M. GRULER, *An Adult.*

MARIANNE GOUVEIA, et al., *Petitioners/Appellees*

v.

ROBERT GRULER, SR., *Respondent/Appellant*

No. 1 CA-CV 25-0402 PB

FILED 04-15-2026

Appeal from the Superior Court in Maricopa County
No. PB2005-000584
The Honorable Sarah Selzer, Judge, *Pro Tempore*

**AFFIRMED IN PART; VACATED AND REMANDED IN PART**

COUNSEL

Dyer Bregman & Ferris, PLLC, Phoenix
By Scott R. Ferris, Scott C. Hodges
*Co-Counsel for Petitioners/Appellees*

Engelman Berger PC, Phoenix
By Matthew Klopp
*Co-Counsel for Petitioners/Appellees*

Spencer Fane LLP, Phoenix
By Alexandra LeClair, Norma C. Izzo
*Counsel for Respondent/Appellant*

---

**OPINION**

Judge Jennifer M. Perkins delivered the opinion of the Court, in which Presiding Judge Michael S. Catlett and Judge Angela K. Paton joined.

---

**P E R K I N S**, Judge:

¶1             The superior court entered an order approving visitation and contact terms between Robert Gruler, Sr., ("Father") and his adult son, Joseph Gruler ("Joey"). Among other things, that order also retained Marianne Gouveia ("Mother") and Robert Gouveia ("Brother") (collectively, "the Co-guardians") as co-guardians. Father appeals from that order. For the following reasons, we vacate the visitation and contact provisions, remand for reconsideration on those provisions and the guardianship determination, and otherwise affirm.

## FACTS AND PROCEDURAL BACKGROUND

¶2             Mother and Father are the parents of Joey and Brother. Joey is under an adult guardianship. The parties' relationship is highly contentious. In March 2021, the parties agreed Mother and Brother would serve as Joey's co-guardians and agreed to a visitation schedule between Joey and Father. In October 2022, the Co-guardians petitioned to decrease Father's visitation with Joey. In September 2023, Father counter-petitioned, asking to serve as Joey's sole guardian and receive increased "parenting time" with Joey.

### I.      The Settlement Agreement

¶3             In November 2023, the parties and Joey's court-appointed attorney reached a settlement agreement (the "Settlement Agreement") purporting to resolve all pending issues.

¶4             The parties agreed to participate in a comprehensive family evaluation conducted by a neutral, mutually approved evaluator ("the Evaluator"). Among other things, the Settlement Agreement required the Evaluator to recommend a visitation schedule between Joey and Father, which the parties agreed to be bound by. The Settlement Agreement did not require the Evaluator to recommend who should be Joey's guardian. The parties agreed their attorneys would "prepare a Stipulated Order for the Court to enter that incorporates" the Evaluator's recommendations

"without change." Then, after considering those recommendations, the court would determine who should be Joey's guardian, with Mother and Father agreeing they would not serve as co-guardians.

¶5 The court approved the Settlement Agreement in a signed order and administratively closed the case. The parties jointly moved for reconsideration, in part because the Settlement Agreement was contingent on the court entering future orders on visitation and guardianship. The court issued an updated order approving the settlement (the "Approval Order").

## II. The evaluation and subsequent orders

¶6 In September 2024, the Evaluator issued a report recommending a detailed visitation schedule that reduced Father's time with Joey. Father then moved under Arizona Rule of Civil Procedure ("Rule") 60(b)(4) (void judgments) and (6) (any other reason justifying relief) to vacate the Settlement Agreement, and by implication the Approval Order. Father argued the Settlement Agreement (1) improperly delegated the court's authority to determine what visitation schedule was in Joey's best interests to the Evaluator and (2) was against public policy. He argued the court should conduct an evidentiary hearing on the recommendations. The Co-guardians opposed that motion, and cross-moved for the court to sign their proposed order containing the Evaluator's recommendations per the Settlement Agreement.

¶7 In an unsigned minute entry, the court denied Father's motion and granted the Co-guardians' cross-motion. The court reasoned that the Settlement Agreement did not impermissibly delegate the court's authority because it was a guardian's responsibility to set a ward's day-to-day schedule. The court also concluded "that the Evaluator and the parties are not asking the Court to modify the current co-guardianship between Brother and Mother." The court signed the Co-guardians' proposed visitation order (the "Visitation Order") three days later. The order incorporated the Evaluator's recommendations, including the contact and visitation schedule, and maintained the Co-guardians' status as Joey's guardians.

¶8 Father timely appealed the Visitation Order. We have jurisdiction. A.R.S. § 12-2101(A)(9).

## DISCUSSION

¶9            As an initial matter, the Co-guardians argue that Father's motion was untimely. Rule 60(b)(4) and (6) motions must be brought within a reasonable time, which is within the superior court's discretion to decide. Ariz. R. Civ. P. 60(c); *see Brooks v. Consol. Freightways Corp. of Del.*, 173 Ariz. 66, 71 (App. 1992). Here, the superior court addressed the merits of Father's motion, indicating it found the motion was timely. The Co-guardians have shown no abuse of discretion in that determination.

### I.      The Settlement Agreement is enforceable.

¶10           We review the Settlement Agreement's enforceability *de novo*. *Robertson v. Alling*, 237 Ariz. 345, 347, ¶ 8 (2015).

¶11           Father contends the superior court erred by denying his motion and entering the Visitation Order. He argues the Settlement Agreement is unenforceable because it impermissibly delegates judicial authority to the Evaluator and is against public policy.

¶12           The Settlement Agreement is not an impermissible delegation of judicial authority. By its terms, the Settlement Agreement binds only *the parties* and does not purport to bind the court. The agreement required counsel to submit a proposed order containing the recommendations to the court, but the court was free to accept, reject, or modify any recommendations inconsistent with Joey's best interests.

¶13           Father's public policy arguments also fail. It is not against public policy for parties to agree in advance to be bound by future outcomes of disputes, as Father argues. That is the nature of settlement agreements, which Arizona has long favored over litigation. *See Phillips v. Musgrave*, 23 Ariz. 591, 594 (1922). And, contrary to Father's argument, nowhere in the Settlement Agreement did the parties agree the Evaluator's future, not-yet-completed recommendations would be in Joey's best interests. We see no public policy concern with the parties agreeing in advance that the Settlement Agreement "is fair and reasonable and in *their* best interests." (emphasis added). The Settlement Agreement is enforceable.

### II.     The superior court did not deny Father due process.

¶14           Father argues the superior court abused its discretion and denied him due process because (1) it did not hold an evidentiary hearing on his visitation and guardianship petition and (2) it did not give him an opportunity to depose the Evaluator. We review a court's decision whether

to hold an evidentiary hearing for an abuse of discretion. *Duckstein v. Wolf*, 230 Ariz. 227, 233–34, ¶ 19 (App. 2012).

**¶15** By entering into the enforceable Settlement Agreement, Father agreed to be bound by the Evaluator's recommendations and to present those recommendations, unchanged, to the court. Parties may stipulate "to evidentiary matters such as the admission, exclusion or withdrawal of evidence from consideration," and are bound by that stipulation unless relieved from it. *Pulliam v. Pulliam*, 139 Ariz. 343, 345 (App. 1984). In *Pulliam*, this Court upheld a similar agreement limiting the parties' evidence to a child custody report and prohibiting the preparer of the report from being called as a witness. *Id.* at 346. By agreeing to be bound by the Evaluator's recommendations, Father waived the right to challenge those recommendations through an evidentiary hearing or a deposition. *See In re MH 2006-000749*, 214 Ariz. 318, 322, ¶ 18 (App. 2007) (the beneficiary of a statute may waive its protections). The court did not abuse its discretion, nor deny Father due process, by enforcing that stipulation.

**¶16** Father has provided no other grounds for relief from this agreement. He argues for the first time on appeal that the Evaluator broke with her own protocols because she did not conduct interviews at both parents' homes. We do not address this contention because issues first raised on appeal are deemed waived. *Odom v. Farmers Ins. Co. of Ariz.*, 216 Ariz. 530, 535, ¶ 18 (App. 2007).

**¶17** In the superior court, Father argued only that he disagreed with the recommendations and had "concerns" about the "process, findings, and conclusions" because Mother made unspecified false statements. Even if this argument were properly before us, these vague assertions would be insufficient to justify relief. Rule 60(b)—Father's basis for seeking relief—requires movants to show "facts which, if proven at trial, would constitute a meritorious defense." *Gonzalez v. Nguyen*, 243 Ariz. 531, 534, ¶ 12 (2018) (cleaned up). The showing "need not be strong," but "must be greater than mere speculation." *Id.* at 535, ¶ 16 (cleaned up).

**¶18** The superior court did not deny Father due process by holding him to his stipulation and denying him an evidentiary hearing or a chance to depose the Evaluator.

## III. The superior court misinterpreted Section 14-5316 when it signed the Visitation Order.

**¶19** Father contends the court misinterpreted Section 14-5316 because it "rubber-stamped" the Evaluator's recommended visitation

schedule. We review the superior court's interpretation of statutes *de novo*. *Matter of Conservatorship of Chalmers*, __ Ariz. __, __, ¶ 12, 571 P.3d 885, 888 (2025). "Statutory interpretation requires us to determine the meaning of the words the legislature chose to use. We do so . . . according to the plain meaning of the words in their broader statutory context." *S. Ariz. Home Builders Ass'n v. Town of Marana*, 254 Ariz. 281, 286, ¶ 31 (2023).

¶20        An amended version of Section 14-5316 took effect shortly after Father filed his counterpetition for visitation and guardianship in September 2023. *See* 2023 Ariz. Sess. Laws, ch. 195, § 8 (1st Reg. Sess.). As amended, Section 14-5316(G) replaces Section 14-5316(F) with no substantive change. But Section 14-5316(D) was amended so that, when a person with a significant relationship to the ward petitions for contact, it becomes the guardian's burden to prove by clear and convincing evidence that the requested contact will be detrimental to the ward's health, safety, or welfare. The timing of Father's petition meant that, but for the Settlement Agreement, he would have had the burden to establish his requested contact was in Joey's best interests. For our purposes here, we cite the current version of the statute unless otherwise noted.

¶21        Section 14-5316 requires a guardian to allow contact between the ward and persons who have a significant relationship to the ward, but the guardian may limit that contact if he or she reasonably believes the contact will be detrimental to the ward's health, safety, or welfare. *See* A.R.S. § 14-5316(A)-(B).

¶22        But when a guardian withholds contact, Subsection (D) allows a person with a significant relationship to the ward to petition the court for an order compelling the guardian to provide contact. When such a petition is filed, "the court *shall* consider" several statutory factors in determining "what, if any, contact between the [petitioner] and the ward is in the ward's best interest." A.R.S. § 14-5316(G) (emphasis added).

¶23        By the plain language of Subsection (G), when a Subsection (D) petition is filed, the court—not the guardian—must determine whether the petitioner's requested contact is in the ward's best interests. And because the petition must contain "the type and frequency of [the] contact being requested," A.R.S. § 14-5316(D), and the court must determine "what, if any, contact . . . is in the ward's best interests," A.R.S. § 14-5316(G), we conclude this duty also applies to petitions to modify contact, not just petitions to allow contact.

¶24 Here, Father petitioned to modify his contact with Joey under Subsection (D). *See* A.R.S. § 14-5101(15) (a blood relative is a person with a significant relationship to the ward). The Settlement Agreement, which binds both Father and the Co-guardians, required the parties to submit the Evaluator's recommended visitation schedule to the court for approval. Because the parties requested the visitation schedule through a Subsection (D) petition, the responsibility thus shifted to the court to independently verify that the requested schedule was in Joey's best interests under Subsection (G) before approving it.

¶25 The Co-guardians argue we can presume the court independently evaluated the proposed schedule because Section 14-5316 does not require the court to make written findings on each factor, and each Subsection (G) factor was supported by the evaluation.

¶26 The Co-guardians are correct that the court need not make written findings*, compare with* A.R.S. § 25-403(B) (courts "shall make specific findings on the record about all relevant factors" implicating a child's best interests), but we cannot presume the court independently concluded the requested visitation schedule was in Joey's best interests under Section 14-5316(G) because the record demonstrates otherwise.

¶27 In the minute entry explaining why the Settlement Agreement was not an impermissible delegation of judicial authority, the court stated:

> Under [Section] 14-5316, the court can intervene to require (or prevent) a ward's contact with someone but does not manage the minutiae of a ward's time. The Settlement Agreement tracks this model and acknowledges that the court would need to approve any proposed changes to who acts as guardian, but also acknowledges that a guardian can determine a ward's day-to-day schedule without Court approval.

¶28 Guardians generally have the authority to coordinate a ward's time without court interference. Guardians have the same rights, powers and duties over a ward that a parent has over a minor child, including the responsibility to oversee a ward's day-to-day activities. *See* A.R.S. §§ 14-5312(A), -5316(A)–(C). But Subsection (D) petitions arise when a petitioner asks the court to "compel" a guardian to provide the requested contact with a ward. A.R.S. § 14-5316(D). Under such circumstances,

Subsection (G) prohibits the court from simply deferring to the guardian's reasonable belief that the petitioner's requested contact is or is not in the ward's best interests, as the superior court did here.

**¶29** Because the court expressly stated that the Co-guardians could approve the petitioned-for contact under Subsection (D) without court approval, the record shows the court approved the requested contact in deference to the Co-guardians' authority, without independently verifying whether the requested contact was in Joey's best interests. This was error. *See DePasquale v. Superior Court*, 181 Ariz. 333, 336 (App. 1995) (in child custody, the court may not delegate a statutorily-mandated duty to determine best interests to a third party); *Alexander M. v. Abrams*, 235 Ariz. 104, 108, ¶¶ 19–20 (2014) (same applies to juvenile dependency and guardianship). The court thus erred by approving the proposed schedule without independently evaluating it under the Subsection (G) best-interests factors.

**IV. The superior court erred by maintaining the Co-guardians' status as co-guardians without determining if the appointment was supported by the recommendations.**

**¶30** Father also argues the superior court erred by maintaining Joey's current guardianship arrangement because its decision rested on incorrect factual findings. We review a court's guardianship order for abuse of discretion. *Matter of Guardianship of Kelly*, 184 Ariz. 514, 518 (App. 1996). A conclusion not supported by facts is an abuse of discretion. *Matter of Conservatorship of Fallers*, 181 Ariz. 227, 230 (App. 1994).

**¶31** The court found, incorrectly, "it appears that the Evaluator and the parties are not asking the Court to modify the current co-guardianship between [the Co-guardians]." But the parties explicitly raised that precise question in their competing motions. The Settlement Agreement was contingent on the court appointing a guardian and stated that a guardianship recommendation was outside the scope of the evaluation. And the parties expressly stated the need for the court to make a future guardianship determination in their stipulated motion for reconsideration. Accordingly, the superior court abused its discretion by not deciding, based on the recommendations, whether it was in Joey's best interests to modify his guardianship under Section 14-5307.

## V. The superior court's failure to comply with Rule 58 is not reversible error.

¶32 Because we vacate the Visitation Order in part, we address Father's Rule 58 argument to the extent it impacts the remainder of the order. We review the superior court's interpretation of court rules *de novo*, but we review its application of the rules for abuse of discretion. *Clayton v. Kenworthy*, 250 Ariz. 65, 67, ¶ 8 (App. 2020).

¶33 Under Rule 58(a)(2)(A)(ii), "[a] judgment may not be entered until 5 days after the proposed form of judgment is served, unless . . . the court waives or shortens the 5-day notice requirement for good cause." Failure to comply with Rule 58's five-day waiting period is not reversible error unless prejudice results. *Foster v. Ames*, 5 Ariz. App. 1, 4 (1967).

¶34 The superior court signed the Visitation Order three days after the Co-guardians lodged their proposed order. According to Father, this was prejudicial error because he was denied an opportunity to raise issues about the Evaluator's recommendations.

¶35 Father failed to establish prejudice from the shortened timeframe. The plain language of Rule 58 "contemplates its use as a means to object to the form of judgment only, not its substance." *United Bank v. Allyn*, 167 Ariz. 191, 197 (App. 1990). Father challenges only the merits of the Visitation Order, not its form. Because he could not raise these substantive issues under Rule 58, the premature entry of judgment did not prejudice Father.

## VI. We decline to award attorney fees on appeal.

¶36 Father requests attorney fees on appeal under Section 14-5316(O)(2), arguing the Co-guardians unreasonably withheld contact with Joey. The Co-guardians request fees on appeal under Section 12-349, arguing Father's appeal was unreasonable and intended to delay, harass, and unnecessarily expand the proceedings.

¶37 At the time the parties filed their competing motions, Section 14-5316 (2017) did not include an attorney fee provision. The attorney fee subsection was added shortly after Father filed his counterpetition. *See* 2023 Ariz. Sess. Laws, ch. 195, § 8 (1st Reg. Sess.). Even under the current version of Section 14-5316(O), Father would not be entitled to a fee award because there was no finding that the Co-guardians unreasonably withheld contact with Joey. We also decline to award fees to the Co-guardians because

Father's appeal is not unreasonable. Father is entitled to his taxable costs on appeal under Section 12-341 upon his compliance with ARCAP 21.

## CONCLUSION

**¶38** The Settlement Agreement is enforceable. We vacate the visitation and contact provisions in the Visitation Order and remand for the court to apply Subsection (G) to determine whether the parties' proposed visitation and contact schedule is in Joey's best interests. We also remand for the court to resolve the guardianship dispute in accordance with Section 14-5307 and the Settlement Agreement. We affirm the Visitation Order in all other respects.



**MATTHEW J. MARTIN • Clerk of the Court**
**FILED**:            JR